**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU's ALPHA, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10140 (JTD) |
| BYJU's ALPHA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CAMSHAFT CAPITAL FUND, LP, CAMSHAFT CAPITAL ADVISORS, LLC, and CAMSHAFT CAPITAL MANAGEMENT, LLC<br><br>Defendants. | Adv. Pro. Case No. 24-50013 (JTD) |

**OBJECTION TO EMERGENCY MOTION FOR LIMITED DISCOVERY, OR, ALTERNATIVELY, FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING EXAMINATION AND CROSS MOTION TO STAY DISCOVERY**

Objectors Riju Ravindran (**"Ravindran"**) and Tangible Play, Inc. (**"Tangible"**, collectively, the **"Objectors"**), by and through their undersigned counsel, object to the Debtor's Emergency Motion for Limited Discovery, or, Alternatively, for an Order Pursuant to Bankruptcy Rule 2004 Authorizing Examination (the **"Motion"**). In support of this objection (the **"Objection"**)[1], the Objectors respectfully state as follows:

**INTRODUCTION**

1. This Court should deny the Motion and not permit Debtor to conduct discovery against Objectors because (a) this bankruptcy case was filed in bad faith and should be dismissed

[1] Objectors are not parties to the above-captioned adversary proceeding but are appearing for the limited purpose of objecting to Debtor's discovery requests directed to Ravindran, including a Rule 2004 examination request in the main bankruptcy case.

and (b) Rule 2004 examinations are not appropriate where an adversary proceeding is pending, as is the case here. It appears that the primary, if not the sole, purpose for filing this bankruptcy case was a tactic to obtain expedited discovery about an alleged fraudulent transfer, and freeze funds pre-judgment after the same parties filing this case failed to get this relief in Florida state court.

2. When Debtor's purported sole shareholder, GLAS Trust Company LLC (**"GLAS"**), realized that it was not successfully gaining traction in a Florida state court fraudulent transfer action (the **"Florida Action"**) GLAS commenced against Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, and Camshaft Capital Management, LLC (collectively, **"Camshaft"**), it caused Debtor to file the bankruptcy case and this adversary proceeding against Camshaft.[2]

3. Discovery—especially expedited discovery—should not proceed in the face of a motion to dismiss the bankruptcy case as being filed in bad faith. Moreover, a Rule 2004 examination is improper where Debtor is seeking information related to the pending adversary proceeding and the Florida Action. Accordingly, this Court should deny the Motion and stay discovery pending a decision on Objector's motion to dismiss the bankruptcy case (the **"Motion to Dismiss"**), which is being filed contemporaneously herewith.[3]

## RELEVANT BACKGROUND

4. As of 2022, Debtor was (and Objectors maintain, is) a wholly-owned indirect subsidiary of Think &Learn Pvt Ltd (**"T&L"**), a private limited company under the laws of India with its registered office in that country, and are part of a group of related business entities, collectively called BYJU's, that comprises the world's largest education technology business,

---

2 Objectors hereby incorporate by reference the facts and arguments set forth in Camshaft's objection to the Motion.

providing personalized learning programs to more than 150 million students around the world, and was, until the campaign initiated by GLAS and Timothy Pohl (**"Pohl"**) at the behest of certain creditors, valued at over $20 billion.

5. As of the date the Debtor commenced this case, the Debtor claims to owe approximately $1.4 billion under a Credit Agreement administered by GLAS, as the agent for the benefit of the prepetition Lenders. GLAS is also the purported sole shareholder of the Debtor. The Debtor's purported sole director and officer, Pohl, was appointed by GLAS. GLAS is also serving as the DIP Agent under the DIP Credit Agreement on behalf of certain members of the ad hoc group of lenders. Pohl does not have anyone independent of GLAS to whom to report.

6. The Debtor was never an operating company. Rather, its sole role was to serve as borrower under the Credit Agreement, disburse funds throughout the group and to serve as the repaying entity. There were no covenants in the Credit Agreement or other agreements requiring cash or other collateral to be held by Debtor.

**A. The Delaware Action and Appeal**

7. On May 3, 2023, Pohl and GLAS commenced an action in the Delaware Court of Chancery (the **"Delaware Action"**) seeking, among other things, a determination under Section 225 of the Delaware General Corporation Law that Pohl was correctly appointed as sole director of Debtor.

8. After a one-day trial on August 4, 2023, the Court of Chancery entered judgment in favor of GLAS and Pohl declaring that Ravindran was validly removed as sole director and officer of the Debtor and that Pohl was properly appointed to those posts in his stead. The judgment was a result of the Court of Chancery's November 2, 2023 bench ruling, which Objectors maintain was the product of several legal errors involving, *inter alia*, failing to enforce

[3] Objectors hereby incorporate by reference the facts and arguments set forth in the Motion to Dismiss.

the parties choice of New York as the exclusive jurisdiction to hear issues arising under the Credit Agreement, incorrect contract interpretation and a failure to correctly apply the doctrines of legal impossibility and unconscionability under governing New York law, as well as incorrectly treating certain dispositive arguments as having been waived. The Court of Chancery's ruling was appealed to the Supreme Court of Delaware. Objectors' opening appeal brief was filed less than 48 hours before GLAS and Pohl caused this bankruptcy case to be commenced.

**B. The New York Action**

9. On June 5, 2023, Tangible, along with certain of its affiliates commenced an action in the Supreme Court of the State of New York against GLAS (the **"New York Action"**), the court to which the parties contractually agreed would exclusively hear disputes under the Credit Agreement.

10. Plaintiffs in the New York Action filed an amended complaint on December 11, 2023, adding Lenders Redwood Master Fund, Ltd., Redwood Drawdown Master Fund III, LP, and Redwood Opportunity Master Fund, Ltd (collectively, **"Redwood"**) as defendants. The amended complaint in the New York Action sought, among other things, a declaration that plaintiffs had not defaulted under the Credit Agreement and sought damages for breach of the Credit Agreement on the part of defendants, as well as tortious interference with Plaintiffs' business relations.

11. Additionally, plaintiffs in the New York Action sought a declaration that Redwood had been properly designated a Disqualified Lender.

12. Under the Credit Agreement, T&L, acting under an irrevocable agency from Debtor, is permitted to designate certain entities as disqualified lenders. Among those are

entities whose "primary activity is the trading or acquisition of distressed debt." Disqualified lenders are subject to certain restrictions, including restrictions on their ability to vote for GLAS, as Administrative Agent, to take certain actions.

13. On June 5, 2023, T&L, acting under the irrevocable agency, designated Redwood as a disqualified lender. Contrary to its duty under the Credit Agreement, GLAS declined to treat Redwood as a Disqualified Lender.

14. Resolution of the New York Action, therefore, implicates, among other things, GLAS's authority to act on behalf of Lenders.

**C. The Florida Action**

15. On September 5, 2023, GLAS filed the Florida Action, alleging fraudulent transfer with respect to approximately $533 million in funds (the **"Funds"**) that Debtor had previously transferred to Camshaft for the purpose of investing.

16. Two days later, GLAS filed an emergency *ex parte* motion to shorten the time for Camshaft to respond to discovery. On October 3, 2023, however, the Florida court denied GLAS's motion to compel and granted Camshaft's motion to vacate the *ex parte* motion.

17. On October 10, 2023, Camshaft filed a motion to dismiss the Florida Action, which was fully briefed and pending at the time GLAS filed this action and the corresponding suggestion of bankruptcy in the Florida Action. Notably, oral argument on Camshaft's motion to dismiss the Florida Action was scheduled for the day after the commencement of this bankruptcy action.

**D. The Duplicative Adversary Proceeding**

18. The Debtor filed this adversary proceeding, and effectively abandoned the Florida Action to obtain the expedited discovery it was denied in Florida. On February 2, 2024, one day

after commencement of the bankruptcy case, Debtor filed this adversary proceeding for the "avoidance and recovery" of the Funds under federal and/or state law.

19. This adversary proceeding is duplicative of the Florida Action because it is based on the same alleged facts and seeks the same remedies.

### E. The Discovery Sought from Ravindran

20. Debtor seeks discovery from Ravindran about the details of (a) any transfer of the Funds in April and July 2022, including any transfers to or from Camshaft and (b) any limited partnership interest issued to Byju's Alpha, Inc. by Camshaft.

## ARGUMENT

### I. THIS COURT SHOULD STAY DISCOVERY BECAUSE THE BANKRUPTCY WAS NOT FILED FOR A BANKRUPTCY PURPOSE AND SHOULD BE DISMISSED

21. This Chapter 11 Case is a litigation tactic conducted by GLAS and Pohl for collateral purposes. At its core, this is a dispute between non-debtor parties: the lenders acting through GLAS and Pohl, on the one hand, and the actual owners of the Debtor, on the other. This action was not filed for any legitimate bankruptcy purpose. The Debtor is being used as a shill for the lenders and should not therefore be permitted to seek discovery (especially on an expedited basis) prior to the Court ruling on the Motion to Dismiss. As set forth in greater detail in the Motion to Dismiss, Debtor filed this bankruptcy case and the adversary proceeding to obtain a tactical advantage in litigation by avoiding the potential outcome of three pending actions—two of which the Debtor's controller, GLAS, filed.

22. The bankruptcy case was not filed for any valid bankruptcy purpose, but instead to gain a strategic advantage in their ongoing litigation against Objectors. The Debtor is a single purpose financing vehicle that has no business operations, no employees, and no unsecured

creditors. The bankruptcy proceeding is unnecessary, a waste of judicial resources, and is nothing more than forum shopping and the use of this Court as a collection agency.

23. The desire to resolve pending litigation is not, without more, a valid basis for a chapter 11 filing. *See Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Memorial Corp.)*, 589 F.3d 605, 622 (3d Cir. 2009) ("The mere fact that the Bankruptcy Court provided a forum to adjudicate the dispute between BEPCO and the Debtors is not a benefit of bankruptcy . . . "); *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 124-25 (3d Cir. 2004) (rejecting debtor's contention that its bankruptcy case served a valid purpose by providing a "framework" for the debtor to resolve significant securities class action exposure); *In re SGL Carbon Corp.*, 200 F.3d 154, 169 (3d Cir. 1999) (recognizing that "companies that face massive potential liability and litigation costs continue to seek ways to rapidly conclude litigation to enable a continuation of their business and to maintain access to the capital markets," but holding that an independent bankruptcy purpose is required because of "the possibility of abuse which must be guarded against to protect the integrity of the bankruptcy system and the rights of all involved in such proceedings"). The only intended purpose of this case is to continue to pursue litigation that is already pending in other jurisdictions, but with the automatic stay in place to prevent Objectors from proceeding with their appeal and to attempt a "mulligan" on GLAS's expedited discovery request made (and denied) in the Florida Action.

24. As set forth in the Motion to Dismiss, (1) the timing of the filing of the Chapter 11 case alone evinces bad faith and (2) the bankruptcy filing does not "further a valid reorganizational purpose." *See SGL Carbon*, 200 F.3d at 165. The bankruptcy case serves neither the preservation of a going concern nor the maximization of the Debtor's property for the

satisfaction of creditors. The Debtor is and always has been a single purpose financing vehicle that has no business operations, no employees, and no unsecured creditors.

25. Indeed, the joinder filed yesterday by GLAS (D.I. 64) indicates the bad faith of the Chapter 11 case. In its joinder (at ¶ 8), GLAS states that "T&L and Ravindran have ceased performing under the Credit Agreement as retaliation for GLAS's and the Lenders' exercise of remedies" and complain that T&L has not made "any interest and amortization payments [] for 11 months".

26. GLAS is trying to have its cake and eat it too. On March 3, 2023, GLAS purported to accelerate the Term Loan on the basis of certain alleged defaults, the same purported defaults upon which the Delaware Action is based. If those *were* in fact legitimate defaults, and GLAS's acceleration and enforcement actions were valid, there is no continuing obligation on T&L or its affiliates to make regular payments under the Credit Agreement. *See, e.g., Oakdale III, LLC v. Deutsche Bank Nat'l Tr. Co*., 189 A.D.3d 1685, 1691 (N.Y. App. Div. 2d Dep't 2020) ("Upon acceleration of the full loan amount, the borrowers' right and obligation to make monthly installments ceases and all sums become immediately due and payable") (internal quotations omitted); *Federal Nat'l Mortgage Ass'n v. Mebane*, 208 A.D.2d 892, 894 (N.Y. App. Div. 2d Dep't 1994) (same); *see also Gardner v. Wells Fargo Bank N.A*., 219 A.D.3d 703, 706 (2d Dep't 2023) (revocation of an acceleration to seek payment of individual installments requires the creditor to "clearly and unequivocally indicate that the acceleration [is] being revoked"). If the March 3, 2023, acceleration was *not* valid, then its assumption of control over Debtor is invalid and it had no power to institute this chapter 11 proceeding in the first place. GLAS cannot have it both ways.

27. This Court may protect a party from undue burden and expense by staying discovery, particularly where discovery would be moot or wasteful when a motion to dismiss is pending. *See Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009) ("In certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile"); *See In re* Peltier, 2021 WL 3733204, *1 (Bankr. D. Or. Aug. 23, 2021) ("The court may protect a party from undue burden or expense, including forbidding discovery or limiting its scope"); *In re Pixius Comm's* LLC, 2020 WL 6821860, *7 (Bankr. D. Kan. Nov. 17, 2020) (staying discovery).

28. This Court need only find that the Motion to Dismiss is not "without basis, frivolous, or filed solely for a dilatory purpose" in order to find this factor weighs in favor of a stay. *Actelion Pharm. Ltd. v. Apotex Inc.*, 2013 WL 5524078, at *6 (D.N.J. Sept. 6, 2013). Thus, this Court need only consider whether the Motion to Dismiss does "not appear to be without foundation in law" in assessing whether a stay would simplify the issues and this bankruptcy case. Here, the Motion to Dismiss will completely dispose of the bankruptcy case and the adversary proceeding against Camshaft, which weighs in favor of staying discovery. A full dismissal would eliminate the need for any discovery in this Court.

29. Even if this Court is inclined to grant Objectors' alternative request for stay relief so they can prosecute their appeal of the Delaware Action (rather than a dismissal of the case), that also militates in favor of a stay of discovery. The appeal will solidify whether GLAS is the sole shareholder and Pohl the director of Debtor, and it will be decided in relatively short order.

30. Accordingly, this Court should deny the Motion and stay discovery pending an adjudication of the Motion to Dismiss, which will be heard by this Court in less than thirty days.

## II. THIS COURT SHOULD DENY A RULE 2004 EXAMINATION BECAUSE THERE IS A PENDING PROCEEDING

31. At the time of the filing of this bankruptcy case, the purported controller of the Debtor, GLAS, already was prosecuting the Florida Action against Camshaft. The Debtor, at the behest of GLAS and Mr. Pohl (whom GLAS controls and directs), filed this almost identical adversary proceeding in this Court.

32. The use of a Rule 2004 examination generally is inappropriate once an adversary proceeding or litigation in another forum has commenced. *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("[O]nce an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 *et seq.*, rather than by a [Rule] 2004 examination"); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004"); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. P. 2004 examination"); *In re Sunedison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (denying Rule 2004 examination where debtor attempted to circumvent the pending proceeding rule by seeking discovery in the bankruptcy action rather than in a pending state court action); *In re Jasper Pellets, LLC*, 647 B.R. 151, 155-56 (Bankr. D. S.C. 2022) (holding "pending proceeding rule" is a "well-recognized exception to the availability of Rule 2004 when litigation is commenced"). "The rationale for the "pending proceeding rule" is to prevent the party from using the Rule 2004 examination, which allows for broad and unfettered discovery, as a tactic to circumvent the

procedural safeguards of the Federal Rules of Civil Procedure." *Id.* (quoting *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002).

33. Although there is an exception to the prohibition of the use of Rule 2004 examinations once an adversary proceeding or litigation in another forum is pending, that exception does not apply here. *In re Washington Mut., Inc.*, 281 B.R. at 51; *see also In re Jasper Pellets, LLC*, 647 B.R. at 155-56. The exception concerns only discovery *unrelated* to the pending adversary proceeding:

> The prohibition on use of Rule 2004 examinations once an adversary proceeding or litigation in another forum is commenced, however, has an exception best expressed by the court in *Bennett Funding*:"[d]iscovery of evidence *related* to the pending proceeding must be accomplished in accord with more restrictive provisions of [the Federal Rules of Bankruptcy Procedure], while *unrelated* discovery should not be subject to those rules simply because there is an adversary proceeding pending." 203 B.R. at 29 (emphasis in original). *See also In re Buick,* 174 B.R. 299, 305 (Banr. D. Colo. 1994) (noting that "even after the trustee has commenced adversary proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not parties to or are not affected by the pending adversary proceeding(s)"); *Blinder, Robinson*, 127 B.R. at 275 ("Entities not affected by the adversary proceeding do not require the greater protections afforded under the Federal Rules, and the Trustee should be permitted to examine them under Rule 2004"); *In re Int'' Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2003) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply"); *In re M4 Enters., Inc.*, 190 B.R. 471, 475 n. 4 (Bankr. N.D. Ga. 1995) (finding that the 2004 examination did not relate to the pending adversary proceeding and thus the 'pending proceeding' rule did not apply).

*In re Washington Mut., Inc.* 281 B.R. at 51 (emphasis in original).

34. Accordingly, where a party seeks a Rule 2004 examination and an adversary proceeding is pending between the parties, "the relevant inquiry is whether the Rule 2004

examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discovery evidence unrelated to the pending proceeding." *Id.*

35. Here, the discovery being sought by Rule 2004 examination is precisely the discovery Debtor (a) already sought in the Florida Action and (b) is seeking in this adversary proceeding against Camshaft. Simply stated, there is no reason for the Rule 2004 examination and a departure from the protections afforded under Federal Rules of Bankruptcy Procedure 7026, *et seq*.

WHEREFORE, Objectors respectfully request that the Court deny the Motion and stay discovery.

Dated: February 14, 2024

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ William E. Chipman, Jr.
William E. Chipman, Jr. (#3818)
Joseph B. Cicero (#4388)
Ryan M. Lindsay (#6435)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191

-and-

**KASOWITZ BENSON TORRES LLP**
Sheron Korpus
David M. Max
Kenneth Coleman
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Riju Ravindran and Tangible Play, Inc.*

4870-9278-5573, v. 8