## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BYJU's ALPHA, INC.,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 24-10140 (JTD) |
| BYJU'S ALPHA, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>CAMSHAFT CAPITAL FUND, LP,<br>CAMSHAFT CAPITAL ADVISORS, LLC,<br>CAMSHAFT CAPITAL MANAGEMENT, LLC<br>RIJU RAVINDRAN and INSPILEARN LLC<br><br>       Defendants. | Adv. Pro. Case No. 24-50013 (JTD)<br><br><br><br><br><br>**Related Adv. D.I.:** **46, 80, 84, 99** |

**CAMSHAFT DEFENDANTS AND WILLIAM MORTON'S MOTION FOR STAY
PENDING APPEAL OF ORDERS ON FINDING OF CONTEMPT AND GRANTING
DEBTOR'S MOTION FOR A PRELIMINARY INJUNCTION**

Hogan Lovells US LLP
Pieter Van Tol (admitted *pro hac vice*)
Christopher R. Bryant (admitted *pro hac vice*)
Elizabeth Carter (admitted *pro hac vice*)
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: pieter.vantol@hoganlovells.com
   chris.bryant@hoganlovells.com
   elizabeth.carter@hoganlovells.com

Saul Ewing LLP
Evan T. Miller (No. 5364)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6864
Email: evan.miller@saul.com

*Additional Counsel Listed on Next Page*

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this chapter 11 case is: 1007 N. Market St. Ste. G20 452, Wilmington, DE 19801.

and

and

HOGAN LOVELLS US LLP
David Massey (*admitted pro hac vice*)
600 Brickell Avenue
Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Email: david.massey@hoganlovells.com

SAUL EWING LLP
Turner N. Falk (admitted *pro hac vice*)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Email: turner.falk@saul.com

*Counsel for Camshaft Defendants and William Morton*

\\4156-0070-4591 v1

**<u>TABLE OF CONTENTS</u>**

**Page(s)**

Table of Authorities ............................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................................ 1

JURISDICTION .................................................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 2

      I.      The Court Orders Expedited Discovery and Issues the March 1 Order ................ 2

      II.     The Order to Show Cause .................................................................................. 3

      III.    The Order of Contempt ...................................................................................... 3

      IV.    The Preliminary Injunction Order....................................................................... 4

      V.     The Camshaft Defendants File a Timely Notice of Appeal of the Contempt and PI Orders........................................................................................................... 5

ARGUMENT.......................................................................................................................... 5

      I.      Standard for Stay Pending Appeal........................................................................ 5

           A.    The Appellants are Likely to Succeed on the Merits of their Appeal as to both the Contempt Order and PI Order....................................................... 6

                i)      The Court abused its discretion when it issued the Contempt Order without holding a hearing or allowing Mr. Morton to be heard. .... 6

                ii)     The Court abused its discretion by issuing the PI Order without taking into account the Camshaft Defendants' Defenses. ............ 11

           B.    The Appellants will be Irreparably Harmed Absent a Stay ...................... 14

           C.    A Stay Pending Appeal with not Injure other Parties ............................. 15

           D.    Granting a Stay is in the Public Interest.................................................... 16

      II.     No Superseding Bond is Warranted to Accompany a Stay ................................. 16

CONCLUSION...................................................................................................................... 18

\\4156-0070-4591 v1

**Page(s)**

**Cases**

*Constructors Ass'n of W. Pa. v. Kreps*,
573 F.2d 811 (3d Cir. 1978)........................................................................................6

*In re Decade. S.A.C., LLC*,
No, 18-11668 (CSS), 2020 WL 1623632 (Bankr. D. Del. Mar. 18, 2020) (J.
Sontchi)...................................................................................................................5

*Dunkin' Donuts, Inc. v. Three Rivers Ent. And Travel*,
42 F. App'x 573 (4th Cir. 2002) .................................................................................9

*E. End Taxi Servs., Inc. v. Virgin Islands Taxi Ass'n, Inc.*,
411 F. App'x 495 (3d Cir. 2011) ................................................................................6

*In re Finova Grp., Inc.*,
No. 01-698-PJW, 2007 WL 3238764 (D. Del. Oct. 31, 2007) ................................17

*Gompers v. Buck's Stove & Range Co.*,
221 U.S. 418 (1911).................................................................................................11

*Matter of Grand Jury Impaneled Jan. 21, 1975*,
529 F.2d 543 (3d Cir. 1976)....................................................................................10

*Halderman v. Pennhurst State Sch. & Hosp.*,
673 F.2d 628 (3d Cir. 1982).....................................................................................6

*Harris v. City of Philadelphia*,
47 F.3d 1311 (3d Cir. 1995).....................................................................................7

*Hilton v. Braunskill*,
481 U.S. 770 (1987)...................................................................................................5

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)..............................................................................................7, 11

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2010 WL 3928638 (E.D. Pa. Oct. 5, 2010)....................................9

*In re Los Angeles Dodgers LLC*,
465 B.R. 18 (D. Del. 2011)......................................................................................15

*Marshak v. Treadwell*,
595 F.3d 478 (3d Cir. 2009)......................................................................................7

\\4156-0070-4591  v1

*Moteles v. Univ. of Pennsylvania,*
730 F.2d 913 (3d Cir. 1984).................................................................................14

*Newton v. A.C. & S., Inc.,*
918 F.2d 1121 (3d Cir. 1990)..................................................................................8

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.* (*In re Integrated
Telecom Express, Inc.*),
384 F.3d 108 (3d Cir.2004)...................................................................................12

*Pasternack v. Klein,*
CV 14-2275, 2017 WL 1508970 (E.D. Pa. Apr. 27, 2017) ......................................10

*Perez v. Weir,*
CIV.A. 11-138, 2015 WL 4545276 (W.D. Pa. July 28, 2015) ..................................9

*In re Philadelphia Newspapers, LLC,*
407 B.R. 606 (E.D. Pa. 2009) ...............................................................................12

*In re Pine Lake Vill. Apartment Co.,*
21 B.R. 395 (S.D.N.Y. 1982) ................................................................................17

*Quarles v. Miller,*
193 B.R. 779 (W.D. Va. 1996) ..............................................................................17

*Reilly v. City of Harrisburg,*
858 F.3d 173 (3d Cir. 2017)..............................................................................11, 12

*Remington Rand Corp.-Delaware v. Bus. Sys., Inc.,*
830 F.2d 1256 (3d Cir. 1987).................................................................................8

*In re Revel AC, Inc.,*
802 F.3d 558 (3d Cir. 2015)...................................................................5, 6, 14, 15

*In re Revel AC, Inc.,*
No. 14-22654 GMB, 2015 WL 567015 (D.N.J. Feb. 10, 2015)................................16

*In re Roche,*
448 U.S. 1312 (1980) ............................................................................................15

*Roe v. Operation Rescue,*
920 F.2d 213 (3d Cir.1990)..................................................................................7, 8

*In re Sphere Holding Corp.,*
162 B.R. 639 (E.D.N.Y.1994) .........................................................................17, 18

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.,*
487 U.S. 72 (1988).................................................................................................6

\\4156-0070-4591 v1

*In re United Merchants & Mfrs., Inc.*,
  138 B.R. 426 (D. Del. 1992)..........................................................................................17

*Victory v. Berks Cnty.*,
  789 F. App'x 328 (3d Cir. 2019) ....................................................................................7

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)...........................................................................................................15

*In re World Imports Ltd.*,
  820 F.3d 576 (3d Cir. 2016)...........................................................................................11

**Statutes**

28 U.S.C. § 158.......................................................................................................................4, 11

28 U.S.C. § 1292(a) ...............................................................................................................4, 11

**Other Authorities**

Fed. R. Bankr. P. 8007 .....................................................................................................5, 16, 17

\\4156-0070-4591 v1

## INTRODUCTION

Defendants-Appellants Camshaft Capital Fund, LP (the "Camshaft Fund"), Camshaft Capital Advisors, LLC, and Camshaft Capital Management, LLC (collectively, the "Camshaft Defendants") and William Morton (together with the Camshaft Defendants, the "Appellants"),[2] by and through their undersigned counsel, hereby move this court (the "Motion") for the entry of an order, a proposed form of which is attached hereto as **Exhibit A**, granting a stay pending appeal of: (i) the Order on Finding of Contempt [Adv. D.I. 80] entered on March 14, 2024 in the above-captioned adversary proceeding (attached hereto as **Exhibit B**, the "Contempt Order") and (ii) the Order Granting Debtor's Motion for a Preliminary Injunction [Adv. D.I. 84] entered on March 18, 2024 (attached hereto as **Exhibit C**, the "PI Order"), including, without limitation, any and all orders, judgments, decrees, decisions, rulings, and opinions that may subsequently be entered regarding the Contempt Order or the PI Order.

## PRELIMINARY STATEMENT

The Court should stay the Contempt Order and the PI Order pending appeal of those orders to the District Court because the Camshaft Defendants, and Mr. Morton, as to the Contempt Order, have demonstrated a strong likelihood of success on the merits of their appeal and the equities weigh in their favor. The process by which the Court ordered the Camshaft Defendants and Mr. Morton in civil contempt of the Court's March 1, 2024 discovery order (as defined below, the "March 1 Order") was flawed and lacked important procedural safeguards which are the hallmark of due process. In addition, the Court entered the PI Order without sufficient authority to do so and without weighing the significant defenses asserted by the Camshaft Defendants.

---

[2] The undersigned represent non-party Mr. Morton in his individual capacity solely as to the appeal of the Contempt Order.

Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, Camshaft does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**STATEMENT OF FACTS**

**I.      The Court Orders Expedited Discovery and Issues the March 1 Order**

Shortly after initiating the captioned adversary proceeding (the "Adversary Proceeding") against the Camshaft Defendants,[3] the Debtor filed an emergency motion to obtain expedited discovery (the "Discovery Motion") focused on the current whereabouts of the $533 million (the "Alpha Funds") that the Debtor originally invested with the Camshaft Defendants in April and July of 2022. Adv. D.I. 7-2, 3. Over the objection of the Camshaft Defendants, the Court granted the motion and allowed the Debtor to immediately serve document requests and interrogatories (the "Discovery Requests"), which the Debtor did on February 16th. The Camshaft Defendants responded to the Discovery Requests with responses and objections on February 23rd (the "Responses") and made a production on February 26th.

The Debtor immediately challenged the Responses and production as being "incomplete," because the Camshaft Defendants did not disclose the name of the non-U.S. trust that was identified in the Responses as being the transferee of a 100% transfer from the Camshaft Fund Capital Account on February 1, 2024 (the "February 1 Transfer"), on behalf of Inspilearn. Following failed attempts by the parties to resolve the dispute, the Camshaft Defendants filed an

---

[3]      The Debtor subsequently amended the adversary complaint (the "Amended Complaint") to name Riju Ravindran and Inspilearn, LLC ("Inspilearn") as additional defendants. Adv. D.I. 30.

Emergency Motion for a Protective Order (the "Motion for Protective Order"), seeking an order of the Court that they were not required to produce information about any transfers beyond the initial transfer of the Alpha Funds to the Camshaft Fund, because only that initial transfer served as the basis for Debtor's fraudulent transfer claims against the Camshaft Defendants. *See* Adv. D.I. 28. The Court overruled the Camshaft Defendants' relevance objection and ordered the Camshaft Defendants to produce documents and information that day (the "March 1 Order"). **Exhibit D**, March 1 Tr. at 17:16-23; 25:2-5.

## II. The Order to Show Cause

When the Camshaft Defendants did not comply with the March 1 Order, the Court held a status conference on March 4th (the "March 4 Status Conference") to discuss the possibility that the Court would issue an order to show cause. **Exhibit E**, March 4 Tr. at 12:1-7. Mr. Morton was not present at that conference and counsel for the Camshaft Defendants explained that Mr. Morton was abroad, had been traveling at the time that the Court requested his appearance, and was unable to be present. *Id*. at 3:20-24. Counsel further stated that he understood that Mr. Morton planned to return from abroad but that he did not know when. *Id.* at 5:2-10. Counsel for the Camshaft Defendants objected to the Court issuing an order to show cause without Mr. Morton present on due process grounds. *Id.* at 11:21-24. The Court issued an order to show cause (the "OSC") notwithstanding and set a show cause hearing for March 14th at which the Court ordered Mr. Morton to appear in person and show cause why he and the Camshaft Defendants should not be held in civil contempt. Adv. D.I. 56; March 4 Tr. at 12:15:18.

## III. The Order of Contempt

The day before what was supposed to be a hearing on the OSC, counsel for the Camshaft Defendants informed the Court that Mr. Morton was still overseas and had been hospitalized. **Exhibit F**, March 14 Tr. at 4:20-25. As a result, Mr. Morton asked for permission to appear the

\\4156-0070-4591 v1

next day by videoconference. *Id.* When Mr. Morton did not provide "proof" of his hospitalization, among other information, the Court denied his request. *Id.* at 9:10-11. The next day, the Court ordered Mr. Morton and the Camshaft Defendants to be in civil contempt of the March 1 Order without holding a hearing. *Id.* at 5:10-13. The Court issued monetary sanctions against them and ordered Mr. Morton and the Camshaft Defendants to each pay a daily of $10,000 until they complied with the March 1 Order to Debtor's satisfaction. *See* Ex. B, Contempt Order, at 3. The Court, furthermore, ordered Mr. Morton to be civilly confined and held an *ex parte* conference with the Debtor (among others) to discuss the form of the contempt order that the Court would issue. March 14 Tr. at 5:24-6:20. Counsel for the Camshaft Defendants objected to the entry of the Contempt Order without Mr. Morton being present. *Id.* 8:6-12.

## IV.     <u>The Preliminary Injunction Order</u>

On the same day as the Court issued the Contempt Order, it also held a hearing on the Debtor's motion for injunctive relief, at which the Court allowed the Debtor's witness, Mr. Ravindran, to appear virtually whereas the same request had been denied Mr. Morton. March 14. Tr. at 11:16-21. On the basis of Mr. Ravidran's testimony, the Court issued the PI Order enjoining the Camshaft Defendants from "taking any steps to transfer, exchange, convert, dissipate, use, or move the Alpha Funds, or otherwise modify any rights related to the Alpha Funds," even though the Amended Complaint alleges that the Camshaft Defendants are not in possession of the Alpha Funds and the Camshaft Defendants confirmed in sworn interrogatory responses that they no longer had custody, possession or control of Alpha Funds. *See, e.g.*, Adv. D.I. 40, ¶¶ 90, 128, 133 and 142; Adv. D.I. 28-4 at 4.

## V. The Camshaft Defendants File a Timely Notice of Appeal of the Contempt and PI Orders

On March 19th, the Camshaft Defendants filed a notice of appeal (the "Appeal") with respect to the Contempt and PI Orders pursuant to 28 U.S.C. §§ 158(a), 158(c)(2) and 1292(a)(1), and Rules 8002 and 8003 of the Federal Rule of Bankruptcy Procedure. Adv. D.I. 86. On March 27, the Camshaft Defendants amended the appeal to add Mr. Morton as an appellant of the Contempt Order. Adv. D.I. 99. This Motion seeks a stay of those orders pending appeal.

## ARGUMENT

## I. Standard for Stay Pending Appeal

Bankruptcy Rule 8007 provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal" or "the suspension or continuation of proceedings in a case." Fed. R. Bankr. P. 8007(a)(1)(A),(D).[4]

In evaluating the appropriateness of a stay pending appeal, Courts consider the following factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The "most critical factors" are "the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will

---

[4] The Appellants acknowledge that some courts within this district have adhered to the divestment doctrine in the context of a stay motion where the subject order is already the subject of an appeal. That doctrine posits that the bankruptcy court is divested of jurisdiction over matters that are the subject of an appeal once the appeal is docketed. *See In re Decade. S.A.C., LLC*, No, 18-11668 (CSS), 2020 WL 1623632, at *3-4 (Bankr. D. Del. Mar. 18, 2020) (J. Sontchi) (denying stay motion and holding that "this Court aligns itself with the policy driving the divestment doctrine"). However, in the absence of controlling guidance from the Third Circuit, and in an abundance of caution, the Appellants move for a stay of the Contempt Order and PI Order before this Court in the first instance.

5

suffer irreparable harm." *Id.* at 568 (quotation marks omitted). However, "the former is arguably the more important piece of the stay analysis." *Id.* In applying the stay factors, the Third Circuit has adopted a "sliding-scale approach," whereby "[t]he more likely the [applicant] is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor." *Id*. at 569; *see also Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978). Here, each one of the factors weights in favor of the Court issuing a stay pending appeal of the Contempt Order and PI Order.

A. <u>**The Appellants are Likely to Succeed on the Merits of their Appeal as to both the Contempt Order and PI Order**</u>

Here, the Appellants are likely to succeed on the merits of their appeal which in and of itself strongly militates in favor of granting the Motion. In evaluating the likelihood of success on the merits of an appeal, the Third Circuit explains that "a sufficient degree of success for a strong showing [of success on the merits] exists if there is a reasonable chance, or probability, of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Revel*, 802 F.3d at 568-69 (quotation marks and citations omitted). Here, the Camshaft Defendants easily meet this standard.

*i)*      *The Court abused its discretion when it issued the Contempt Order without holding a hearing or allowing Mr. Morton to be heard.*

First, the Contempt Order is subject to immediate appeal both by Mr. Morton and the Camshaft Defendants. The right of a non-party to immediately appeal a contempt order is well-established. *See U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc*., 487 U.S. 72, 76 (1988) ("[T]he right of a nonparty to appeal an adjudication of contempt cannot be questioned."); *E. End Taxi Servs., Inc. v. Virgin Islands Taxi Ass'n, Inc*., 411 F. App'x 495, 499 (3d Cir. 2011) ("A contempt order against a non-party, whether criminal or civil in nature, is immediately appealable."). While ordinarily the immediate appeal of a contempt order as to a party is not

available, the same is not true when the party's appeal is incidental to an otherwise appealable order. *See, e.g., Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982) (holding that civil contempt orders are appealable as to parties where they are "incident to an appeal from a judgment otherwise appealable."). Here, the Camshaft Defendants' appeal of the Contempt Order is not only incidental to Mr. Morton's appeal, it is the same appeal.

Although not identical to criminal contempt proceedings, civil contempt proceedings are nonetheless subject to due process requirements. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (holding that civil contempt proceedings are subject to procedural protections). In cases such as the present—where sanctions are imposed for "contempts occurring out of court"—due process requires that "further procedural protections are afforded." *Id.* at 833. Here, neither Mr. Morton, nor the Camshaft Defendants, were afforded their due process rights before the imposition by the Court of the Contempt Order, which is grounds for reversal.[5]

In the first instance, the Court did not provide a meaningful opportunity for Mr. Morton to be heard on the show cause order before the Court imposed significant monetary sanctions and indefinite civil confinement against him. There is no dispute that the Court entered the Contempt Order without Mr. Morton's presence (either remotely or in person) at the March 14 hearing on the OSC, and that no attorney appeared on his behalf.[6] "Due process generally requires an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir.1990). This most basic requirement likewise extends to civil contempt proceedings and includes the right to be heard.

---

[5]     The standard on appeal for reviewing a contempt order by the District Court is for abuse of discretion. *See Victory v. Berks Cnty.*, 789 F. App'x 328, 333 (3d Cir. 2019) (citing *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009)).

[6]     Counsel for the Camshaft Defendants informed the Court at the March 4 Status Conference that Mr. Morton had recently retained separate counsel. *See* March 4 Tr. at 5:11-19; March 14 Tr. at 6:9-13.

\\4156-0070-4591 v1

*Harris v. City of Philadelphia*, 47 F.3d 1311, 1328 (3d Cir. 1995) (citing *Bagwell*, 512 U.S. at 831); *Remington Rand Corp.-Delaware v. Bus. Sys., Inc.*, 830 F.2d 1256, 1258 (3d Cir. 1987) (reversing contempt order on basis of due process where the lower court did not follow requite procedural safeguards in issuing the order).

As early as the March 4 Status Conference, counsel for Camshaft raised to the Court due process concerns about the Court's scheduling of a show cause hearing while Mr. Morton was out of the country. *See* March 4 Tr. at 11:20-24 ("On the order to show cause my concern is just one of due process. My client is out of the country."). Then, one-day before the scheduled hearing, counsel for the Camshaft Defendants raised with the Court that Mr. Morton remained out of the country and had been hospitalized. March 14 Tr. at 4:20-25. However, the Court did not grant a continuance or give permission for Mr. Morton to appear virtually, even to explain his absence. *Cf. Roe*, 920 F.2d at 215 (holding that court did not violate contemnor's due process rights by ordering contempt of court without contemnor's presence, but only after contemnor had been given three prior continuances of the hearing date).

This stands in contrast to Mr. Ravindran, who the Debtor called as an adverse witness in connection with the preliminary injunction hearing and to whom, unlike Mr. Morton, the Court gave an opportunity to appear virtually and explain his absence. The fact that the Court's clerk had earlier submitted questions by email to Mr. Morton inquiring about his hospitalization and current location was no substitute for the Court's direct questioning of Mr. Morton. With respect to Mr. Ravindran, the Court allowed counsel to establish Mr. Ravidran's unavailability, pursuant to Rule 43 of the Federal Rules of Civil Procedure, and then the Court permitted Mr. Ravindran to testify from Dubai. March 14 Tr. at 11:16-20 (establishing a record for "[w]hy [Mr. Ravindran] is not in the courtroom"). No similar procedure was followed for Mr. Morton. *See Newton v. A.C. & S.,*

*Inc.*, 918 F.2d 1121, 1127 (3d Cir. 1990) (holding that court's "disparate treatment of plaintiffs and defendants" in the context of contempt proceedings would not be "countenanced"). The fact that Mr. Morton was not provided an opportunity to appear also deprived the Camshaft Defendants of their right to be heard, because, as the Court observed, Mr. Morton is "the only one who can respond on behalf of [the Camshaft Defendants]." March 14 Tr. at 5:9-14. The Court then held an *ex parte* conference with counsel for the Debtor (among others) to discuss the form of the contempt order, but did not involve counsel for the Camshaft Defendants, which further compounded their lack of being heard. *Id.* at 6:8-20.

Additionally, the Court did not hold any sort of evidentiary hearing or support its findings with *any* evidence before issuing the Contempt Order. *See Dunkin' Donuts, Inc. v. Three Rivers Ent. And Travel*, 42 F. App'x 573, 575 (4th Cir. 2002) (vacating contempt judgment of district court for failure to hold an evidentiary hearing); *see In re Linerboard Antitrust Litig.*, MDL No. 1261, 2010 WL 3928638, at *5 (E.D. Pa. Oct. 5, 2010) ("In this case, where Peoples faces possible coercive sanctions, [] the Court concludes that due process requires a hearing to resolve any disputed factual issues.").

The Court did not make any factual determinations as to Mr. Morton's or the Camshaft Defendant's ability to pay the significant monetary sanctions levied against them before entering the order, which is grounds for reversal. *See Perez v. Weir*, CIV.A. 11-138, 2015 WL 4545276, at *3 (W.D. Pa. July 28, 2015) (holding that a court cannot "impose financial penalties to sanction a party without making a factual finding that the contemnor is financially able to pay the sanctions."). Instead, the Court concluded—without any supporting evidence—that because Mr. Morton might be aware of the location of the Alpha Funds that he could afford to pay the sanctions. *See* March 14 Tr. at 5:15-22 (ordering monetary sanctions of $10,000 per day given "the fact that

9

[Mr. Morton] apparently is aware of the location of a half a billion dollars or more than half a billion dollars that was removed from the debtor's accounts prior to their filing for bankruptcy. *He certainly has the financial ability to pay those fines*, including Camshaft") (emphases added). However, there were was no evidence to support a finding that Mr. Morton has access to the Alpha Funds, or the financial ability to pay the monetary sanctions, only the Court's "susp[icion]." *Id.* 7:18-8:2. Although the Court indicated that it had "no proof otherwise" (referring to Mr. Morton's access to the Alpha Funds) the Camshaft Defendants did submit sworn interrogatory responses stating under oath that the Camshaft Defendants, including Mr. Morton, do not have possession or control of the funds. March 14 Tr. 5:23-24; at 7:18-24. Indeed, at one point, the Court wondered aloud if "imposing civil monetary penalties against Camshaft is going to result in anything," because the Court is not aware if "Camshaft even has any assets available at this time," belying any affirmative finding of their ability to pay.[7] March 4 Tr. at 13:1-4.

Putting aside the dearth of evidence on which to base the monetary sanctions, there is no indication that the Court considered the least intrusive sanctions necessary to coerce compliance with the March 1 Order. This runs afoul of Third Circuit case law which "has mandated…that the district court use 'the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders.'" *Pasternack v. Klein*, CV 14-2275, 2017 WL 1508970, at *2-3 (E.D. Pa. Apr. 27, 2017) (quoting *Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976)).

The Contempt Order suffers from additional flaws on its face that serve as the basis for reversal. For example, the Contempt Order conditions the purging of contempt on an act by *the*

---

[7] Indeed, if the Debtor is to be believed, the Camshaft Defendants have no assets to pay the sanctions. *See* March 1 Tr. at 13:12-14 (arguing that the Camshaft Defendants have "no assets that are material compared to the $533 plus million that [BYJU's Alpha] transferred to the Camshaft Fund").

\\4156-0070-4591 v1

*Debtor* not the Camshaft Defendants or Mr. Morton. *See* Ex. B, Contempt Order, at 3 (ordering monetary sanctions to continue until the "*Debtor* confirms receipt of the information Camshaft was ordered to produce") (emphasis added). This condition runs afoul of Supreme Court precedent which holds that a contemnor must be "able to purge the contempt and obtain his release by committing an affirmative act," so that he "'carries the keys of his prison in his own pocket.'" *Bagwell*, 512 U.S. at 828, quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)). Here, the Court impermissibly handed the prison keys to the Debtor, not Mr. Morton or the Camshaft Defendants.

> ii) *The Court abused its discretion by issuing the PI Order without taking into account the Camshaft Defendants' Defenses.*

The District Court has appellate jurisdiction under both 28 U.S.C. §§ 158(a) and 1292(a). *See In re World Imports Ltd.*, 820 F.3d 576, 582 (3d Cir. 2016) (holding that District Court had authority to hear an appeal of the Bankruptcy Court's order granting an injunction under both statutes).

In the Third Circuit, courts are guided by four factors in determining whether to grant a movant's motion for a preliminary injunction: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted.... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017). The first two factors, referred to as "gateway factors," are the "most critical." *Id.* at 179. Only when a movant establishes the first two factors does a court move on to the remaining two. *Id.* In addition, "[h]ow strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent,

the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* (citation omitted).

Here, the Court committed error by deciding the Debtor's likelihood of success on the merits based merely on Mr. Ravidran's testimony and without considering any of the Camshaft Defendants' defenses. [8] *See* March 14 Tr. at 178:15-19. ("I think Mr. Ravidran's testimony today clearly shows the likelihood of success on the merits on the breach of fiduciary duty and the fraudulent conveyance claims"). In relevant part, the Court held:

> So, for those reasons, I conclude that there is grounds for me to be able to enter an injunction and I will do so. I believe – and I'm getting into the standard for granting an injunction. You need to determine, one, whether there is a likelihood of success. I think Mr. Ravindran's testimony today clearly shows the likelihood of success on the merits on the breach of fiduciary duty and the fraudulent conveyance claims. He clearly did not understand what was happening and did it anyway. He feigns ignorance, even though he was a member of the board of the parent company and the sole member of BYJU's Alpha, and therefore he had a duty to act on behalf of the creditors before he transferred all of the funds held by BYJU's Alpha to a third party.
>
> So I find that there is a likelihood of success on the merits . . .

Mar. 14 Tr. at 178:12-179:1.

In its decision, the Court does not refer to any of the Camshaft Defendants' defenses as set forth in their Brief in Opposition to Debtor's Motion for Temporary Restraining Order (the "Opposition") [Adv. D.I. 57], including that there is no basis to enter an injunction against the Camshaft Defendants because the Debtor does not allege in its pleading that the Camshaft Defendants have any control over the Alpha Funds. *See, e.g.,* Adv. D.I. 40; March 14 Tr. at 154:2-

---

[8] The Bankruptcy Court's issuance of a preliminary injunction is to be reviewed by the District Court for abuse of discretion. *See In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 610 (E.D. Pa. 2009) (citing *In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir.2002)). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc.*), 384 F.3d 108, 118 (3d Cir.2004) (citation omitted).

\\4156-0070-4591 v1

5. Indeed, in the Amended Complaint, the Debtor alleges that other entities (not the Camshaft Defendants) hold the Alpha Funds, which is consistent with the Camshaft Defendants' interrogatories responses and the Court's own assessment that the "parent company [Think and Learn] is hiding [the $533 million] and not disclosing where they are."[9] Adv. D.I. 40, ¶¶ 90, 128, 133 and 142; Adv. D.I. 28-4 at 4; March 14 Tr. at 179:4-6. Thus, under Supreme Court precedent, the Debtor is not legally entitled to a preliminary injunction against the Camshaft Defendants because the Debtor does not allege any basis for the entry of a permanent injunction in the Amended Complaint. *See* Adv. D.I. 57 at 2-3; March 14 Tr. at 154:2-13 (arguing that under relevant case law one "cannot seek relief that is not supported by the allegations in the complaint"). Moreover, counsel to the Camshaft Defendants argued at the hearing on the preliminary injunction that the record establishes, through Mr. Pohl's declaration, that the lenders were plainly aware of the initial transfer of $533 million to an account in the United States and did not argue at that time that the transfer was fraudulent, which undercuts any present assertion that it was. March 14 Tr. at 155:14-156:7.

In addition, the Court did not address the defenses raised in the Camshaft Defendants motion to dismiss the Complaint in this proceeding or, in the alternative, to abstain (the "Motion for Dismissal/Abstention"). Adv. D.I. 34. As set forth therein, the Camshaft Defendants raised three primary defense to the fraudulent transfer claims, including that those claims were negated by the Credit Agreement, which expressly allows Debtor's the investment in the Camshaft Fund; that the Camshaft Defendants were a mere conduit (not an "initial transferee") of the Alpha Funds

---

[9]     For this same reason, the Court erred in holding that the Debtor would be irreparably harmed absent the issuance of a preliminary injunction against the Camshaft Defendants because, as the evidence shows and the Debtor asserts, the Camshaft Defendants are no longer in possession of the Alpha Funds. Finally, the Court erred in find that the public interest weighed in favor of entering the injunction against the Camshaft Defendants. March 14 Tr. at 180:6-10.

\\4156-0070-4591 v1

transferred to them; and the Debtor received Reasonably Equivalent Value in exchange for its investment. *Id.* at 8-14.

Because a defendant's defenses inherently bear on the validity of a plaintiff's claim, courts must consider them in weighing a plaintiff's likelihood of success on the merits. Indeed, the Third Circuit has found that failure to do so constitutes reversible error. *See Moteles v. Univ. of Pennsylvania*, 730 F.2d 913, 921 (3d Cir. 1984) (holding that university's bona fide occupational qualification defense was relevant to resolution of claim and it was error to rule that the defense was inapplicable to a finding of probability of success on the merits was erroneous, reversing district court's issuance of a preliminary injunction). The Bankruptcy Court's complete failure to address these defenses in its decision to grant the preliminary injunction requires reversal of the Bankruptcy Court's Preliminary Injunction Order. *See Moteles*, 730 F.2d at 921.

The Camshaft Defendants further contend that the Debtor did not establish the other criteria necessary for obtaining a preliminary injunction, namely that the Debtor would suffer irreparable harm as result of not obtaining an injunction against the Camshaft Defendants or that the balance of equities weigh in Debtor's favor. *See* March 14 Tr. at 179:1-11; 179:24-180:10. For example, the Court's determination as to irreparable harm focused primarily on the potential unavailability of funds to satisfy a judgment at the time of a trial on the merits, yet ordering the Camshaft Defendants to refrain from doing or taking any action with respect to funds of which they are not in possession or control of will not impact or mitigate that potential harm. *Id.*

## B. The Appellants will be Irreparably Harmed Absent a Stay

Mr. Morton and the Camshaft Defendants will suffer irreparable injury in the absence of a stay of the Contempt Order and PI Order pending appeal. *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing irreparable harm as one of the four factors considered on appeal). "Irreparable harm is an injury that 'cannot be redressed by a legal or equitable remedy following

14

a trial.'" *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 34 (D. Del. 2011) (citation omitted). Mr. Morton and the Camshaft Defendants bear the burden to "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]." *In re Revel AC, Inc.*, 802 F.3d at 569 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The Third Circuit has interpreted likelihood in the context of this second factor as "more apt to occur than not." *Id.*

Here, with respect to the Contempt Order, and in the absence of a stay, the Camshaft Defendants and Mr. Morton are faced with the "unpalatable choice" of having to comply with the March 1 Order, which would moot their appeal, or face steep financial penalties in the absence of compliance, and, in the case of Mr. Morton, commitment to jail. *In re Roche*, 448 U.S. 1312, 1316 (1980) (holding that stay applicant sufficiently demonstrated irreparable harm where, absent stay, the applicant faced compliance with the contempt order, which would moot his appeal, or civil confinement).

With respect to the PI Order, Mr. Morton and Camshaft Defendants will be irreparably harmed because they are the subject of an injunction that prevents them from "taking any steps to spend, transfer, exchange, convert, dissipate, liquidate, or otherwise move or modify any rights related to" the $533 million dollars when they do not have access to or control of those funds. Ex. C, PI Order, at 2. This order exposes Mr. Morton and the Camshaft Defendants to further penalties for non-compliance with the PI Order even though, given their lack of access or control the Alpha Funds, it is impossible for them to comply.

### C. A Stay Pending Appeal with not Injure other Parties

If the Court Grants the motion and enters a stay it will not cause the Debtor (or GLAS) to suffer significant harm. Since the Contempt Order does not direct the Camshaft Defendants to compensate the Debtor or GLAS for any alleged harm resulting from their non-compliance with the March 1 Order, those parties will not be harmed if the order is stayed pending appeal. The

Camshaft Defendants and Mr. Morton have noticed their appeal, and any possible harm that could inure to those parties pales in comparison to the harm that the Camshaft Defendants and Mr. Morton face at the prospect of facing sanctions or compliance with an order that violates their due process rights and will moot their appeal. Likewise, no harm will inure to either the Debtor or GLAS if the PI Order is stayed as respect the Camshaft Defendants, since, by their own admission, the Camshaft Defendants no longer have possession of, or access to, the $533 million that is the subject of the PI Order.

### D. Granting a Stay is in the Public Interest.

The public has an interest in the issuance of orders that are the result of due process, and, therefore the public is served by staying the Contempt Order which was procured without a hearing or opportunity to be heard. Likewise, no public interest is served by forcing the Camshaft Defendants to be subject to an injunction which they have no ability to comply with since they could not move or transfer the Alpha Funds, even if they wanted to, in the absence of control over them.

### II. No Superseding Bond is Warranted to Accompany a Stay

Under Rule 8007, where, like here, a temporary stay pending appeal is warranted, a court "*may* condition" the stay on the moving party posting "a bond or other security with the bankruptcy court." Fed. R. Bankr. P. 8007(c) (emphasis added) (stating that "[t]he district court, BAP, or court of appeals may condition relief [sought under Rule 8007] on [the] filing [of] a bond or other security with the bankruptcy court."). The imposition of a bond, however, is by no means a mandatory requirement when a stay is issued but is within the *discretion* of the court to order. *See In re Revel AC, Inc.*, No. 14-22654 GMB, 2015 WL 567015, at *6 (D.N.J. Feb. 10, 2015) (concluding that "no bond will be required in connection with the temporary stay" and noting that "[w]hether to require such a bond for a temporary stay is in the discretion of this Court, pursuant

\\4156-0070-4591 v1

to [the Federal Rules of Bankruptcy Procedure]") (citing Fed. R. Bankr. P. 8007); *Quarles v. Miller*, 193 B.R. 779, 782 (W.D. Va. 1996) ("The posting of a *supersedeas* bond is not a prerequisite to obtaining a stay pending appeal; rather, the requirement of posting a supersedeas bond is *discretionary*") (emphasis in original) (citing *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y.1994)).[10]

A court may require a bond in order to "protect the adverse party from potential losses resulting from the stay," but where, as here, the non-movant "will not suffer any loss as a result of the stay pending appeal" then "*a bond is unnecessary.*" *In re United Merchants & Mfrs., Inc.*, 138 B.R. 426, 430 (D. Del. 1992) (emphasis added) (concluding that no bond was required).

Generally, a bond may be necessary where the stay is likely to cause "diminution in the value of property pending appeal" such that there is a need to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Sphere*, 162 B.R. at 644 (citations omitted); *see In re Pine Lake Vill. Apartment Co.*, 21 B.R. 395, 398 (S.D.N.Y. 1982) (concluding that the posting of a bond as a condition to obtaining a stay was necessary in order to protect the non-movant creditor from the decline in value of the collateral asset at stake—an apartment complex).

Here, however, no such concerns exist, and thus no bond is necessary because no substantial harm will befall Debtor as a result of the stay. *See In re Finova Grp., Inc.*, No. 01-698-PJW, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) (granting a stay pending resolution of the appeal and declining to condition the stay on the posting of a bond because "no substantial harm

---

[10]     Much of the case law on which Appellants rely references an earlier version of the Federal Rules of Bankruptcy Procedure (the "Rules"), where the discretion of the bankruptcy court to condition a stay pending appeal on the movant's posting of a bond was governed by Rule 8005. The Rules have since been amended such that Rule 8007 now governs discretionary stays pending appeal. Nevertheless, the courts' reasoning in this case law should be equally applicable to the situation presented here, as both provide that the court "may condition" a stay pending appeal on the filing of a bond.

17

will come to the Debtors as a result of this stay."). Indeed, Camshaft no longer has nor controls the funds at issue, such that there is no likelihood that Debtor will suffer any loss as a result of the Court granting the requested temporary stay, which at most will simply preserve the status quo until the appeal is decided. *See In re Sphere*, 162 B.R. at 644 ("This case does not require a bond (nor have any interested parties asked for one) because little or no damage will be incurred as a result of the stay.").

Accordingly, this Court should grant Camshaft's request for a stay pending appeal ***without*** requiring Camshaft to post a bond.

## <u>CONCLUSION</u>

For the foregoing reasons, the Camshaft Defendants respectfully request that the Court grant the Motion and order a stay of both the Contempt Order and PI Order.

\\4156-0070-4591 v1

Dated: Wilmington, DE
         March 27, 2024

HOGAN LOVELLS US LLP
Pieter Van Tol, Esq. *(admitted pro hac vice)*
Christopher R. Bryant, Esq. *(admitted pro hac vice)*
Elizabeth C. Carter, Esq. *(admitted pro hac vice)*
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: Pieter.vantol@hoganlovells.com
          Chris.bryant@hoganlovells.com
          Elizabeth.carter@hoganlovells.com

- and -

HOGAN LOVELLS US LLP
David Massey, Esq. *(admitted pro hac vice)*
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Email: David.massey@hoganlovells.com

*Counsel for the Appellants*

SAUL EWING LLP

*/s/ Evan T. Miller*
Evan T. Miller (No. 5364)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6864
Email: Evan.miller@saul.com

- and -

Turner N. Falk, Esq. *(admitted pro hac vice)*
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Email: turner.falk@saul.com

\\4156-0070-4591  v1