**EXHIBIT D**

**March 1, 2024 Transcript**

\\4163-8548-8207 v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Chapter 11
                                    . Case No. 24-10140 (JTD)
BYJU'S ALPHA, INC.,                 .
                                    .
            Debtor.                 .
. . . . . . . . . . . . . . . . . .
                                    .
BYJU'S ALPHA, INC.,                 .
                                    .
        Plaintiff,                  . Adv. Pro. No. 24-50013 (JTD)
                                    .
    v.                              .
                                    .
CAMSHAFT CAPITAL FUND, LP           .
CAMSHAFT CAPITAL ADVISORS,          . Courtroom No. 5
LLC, AND CAMSHAFT CAPITAL           . 824 North King Street
MANAGEMENT, LLC,                    . Wilmington, Delaware 19801
                                    .
        Defendant.                  . Friday, March 1, 2024
. . . . . . . . . . . . . . . . . .   11:00 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Kenneth Enos, Esquire
                         YOUNG CONAWAY STARGATT & TAYLOR LLP
                         Rodney Square
                         1000 North King Street
                         Wilmington, Delaware 19801
(APPEARANCES CONTINUED)

Audio Operator:          Sharon A. Page, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For the Debtor: | Benjamin Finestone, Esquire<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN LLP<br>51 Madison Avenue<br>22nd Floor<br>New York, New York 10010 |
| For Camshaft: | Pieter Van Tol, Esquire<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, New York 10017 |
| For Riju Ravindran: | Joseph Cicero, Esquire<br>CHIPMAN BROWN CICERO & COLE LLP<br>1313 North Market Street<br>Suite 5400<br>Wilmington, Delaware 19801 |
| | Sheron Korpus, Esquire<br>KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, New York 10019 |
| For GLAS Trust Company: | Ravi Shankar, Esquire<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654 |

INDEX

STATUS CONFERENCE:                                                    PAGE

Agenda
Item 1: Emergency Motion of Debtor for Limited          4
        Expedited Discovery or, Alternatively,
        for an Order Pursuant to Bankruptcy
        Rule 2004 Authorizing Examination
        [D.I. 58/A.D.I 7, 2/9/24]

Agenda
Item 2: Camshaft Defendants' Emergency Motion
        for a Protective Order [D.I. 28, 2/28/24]

        Court's Ruling:                                 17

(Proceedings commenced at 11:11 a.m.)

(Call to Order of the Court)

THE COURT: Mr. Van Tol, I don't know what made it on the record and what didn't, but we were -- you had begun your argument and you were objecting to the discovery request on relevancy grounds because they're not related to the underlying claims against your client in the adversary proceeding. I left it with a cliffhanger and I said the problem -- my problem with your argument is multi-fold.

Number one, given that your client is objecting to producing information about subsequent transfers after it transferred the funds to third parties certainly shows that they have the information and are just refusing to produce it because, otherwise, they would say we don't have the information. So, obviously, they have it. That also leads me to conclude that they couldn't possibly be just a mere conduit if they know where the subsequent transfers occurred and where the money went. So, they must have this information.

Number two, it is relevant to the underlying claims in a number of ways, not the least of which is I don't know where the money is. It might have done a loop de loop and come right back to Camshaft or come back to a Camshaft controlled entity or an entity in which Camshaft has an interest. So, that certainly would be relevant to the

underlying claims in the litigation. It also goes to damages and whether the funds can be recovered, and does Camshaft have the ability to pay a damage claim if they are found liable.

So, there are a number of ways in which the information that was sought is relevant. I am also concerned about the fact that Camshaft refused to identify who its shareholders are and arguing that there is no relevancy to that clearly is. I want to know who the shareholders are. I want to know who was involved in this whole transaction. The debtors want to know who was involved in this whole transaction.

As I said before in this case, I have very serious concerns about what is happening here. Half a billion dollars disappeared and no one is telling anybody where it is. That is a major issue. I have already said, at least, twice, maybe three times, that all the relevant information needs to be produced.

So, I will give you an opportunity to rebut what I just said, but I think its unlikely you are going to convince me that the requested information is not relevant to the underlying claims. I also don't buy the argument its not -- this argument is not relevant because I find that the underlying information is relevant to the underlying litigation.

The idea that there is some kind of catch-22 that because the debtors sued Camshaft and the information that they are seeking is not relevant to the underlying litigation that they can't then pursue it under Rule 2004 because they sued Camshaft and, therefore, can't ask for 2004 discovery borders on the ridiculous. It is absolutely a frivolous argument and I don't buy that, but I don't need to get to 2004 because I think its relevant under the adversary proceeding itself.

Go ahead, Mr. Tol, see if you can convince me otherwise.

MR. VAN TOL: Thank you, Your Honor. Just taking your points in order our interrogatory answers are up to date in the sense that Camshaft does not have the funds. So, to Your Honor's point about whether there is a circular transaction where it comes back that is not the case.

THE COURT: Well, as I said, it might not be just Camshaft. It might be some affiliate in which Camshaft has an interest. It might be an entity that Camshaft has dominion and control over. I don't know that.

MR. VAN TOL: We construed it broadly, Your Honor, the definition of Camshaft. No Camshaft related entity has the funds, which is how we answered the interrogatories and those are accurate.

When it comes to Your Honor's point about damages,

again, with respect under the federal rules of civil procedure one can't take discovery at this point to figure out whether someone is able to pay a claim. That comes after there is a judgment. So, that is the reason we objected to the relevance of that.

On Your Honor's last point about Rule 2004, which I take and I will focus on the federal rules, the debtors cite a case called Allied Systems, Your Honor, and in that case it says a plaintiff is not entitled to discovery for the purpose of determining whether or not they may have a factual basis for a claim not yet made. Essentially, what they are doing, Your Honor, is they say we may have a claim against a subsequent transferee, give us that information.

Their only claim, Your Honor, is against Camshaft as an initial transferee. If they want to get the information from Inspalearn (phonetic) I think that is the purpose of their amended complaint, they should go get it from the next transferee rather than Camshaft which is at the beginning of the chain, has its own unique defenses. So, Your Honor, I am not suggesting that its irrelevant to their new claims, I'm suggesting its irrelevant to their existing claims.

And on that last point, if I may, and this is purely a technical point, but that amended complaint was filed without leave of the Court as was required because 21

days had passed since the original complaint. So, I am not sure what the procedural status is of that, whether it's actually the live controlling complaint, which is why I am focused on the original complaint.

So, Your Honor, again, we are looking at what is before us. What is before us is solely a claim against Camshaft. We have answered those claims. We will answer those claims with a motion to dismiss and even the debtor doesn't think that subsequent transferee information is relevant and they said so in their complaint.

THE COURT: All right. Well, again, the fact that they know this information and are refusing to produce it gigantic red flag, gigantic red flag. It doesn't harm them. If they are truly just a mere conduit it doesn't harm them at all to produce this information.

MR. VAN TOL: Your Honor, as a financial institution or however you want to characterize a hedge fund its not good business to reveal the details of a transaction unless its directly relevant to what is being alleged; otherwise, you have people say I do business with Camshaft its going to be on the front page of whatever publication the next day. That is why we are being --

THE COURT: Well, the problem with that is they had to have been involved. They had to know where the information -- to know where this money went after they

transferred it to this offshore trust fund. They had to have been involved in some way. Somebody told them where it went afterwards.

MR. VAN TOL: And we identified that on the second transfer. Your Honor, remember there's three transfers: there's the initial, there's the second, and then there's a third. The second transfer was, at least, referred to in the complaint. So, we identified that it went from Camshaft to Inspalearn.

Now after that point, Your Honor, it really is Inspalearn that has the best information on what happened. To the extent Camshaft is involved, yes, it has that information but there is no claim against it for that transaction. So, under the relevance rules you have to tie a request to a claim or defense. Their discovery request against us doesn't relate to either a claim or a defense. It may be information that the parties want and it may be relevant to Inspalearn, but it is not relevant to the claims or defenses as to the Camshaft defendants.

THE COURT: Let me hear from the debtors.

MR. FINESTONE: Good morning, Your Honor. Ben Finestone from the firm Quinn Emanuel, proposed counsel to the debtors-in-possession.

Your Honor, the -- I will first just say, but I won't spend a lot of time on it, because I appreciate that

the Court has read our papers, relevance aside we think this information has been ordered to be disclosed. I have been doing a lot of introspective thoughts over the last couple of weeks, I have been watching this kind of lawyering and knowing in my head that when I get these kind of instructions from Courts, I follow them. I have been thinking, do I not fight for my clients as hard as some of these other lawyers who find ways to not follow these instructions.

Ultimately, I landed on a comfortable place that, no, we have to fight for our clients, we have to try to advance our client's interests, but, of course, that is also subject to orders and directions of the Court. That is a pretty important foundation of civil process in the United States. So, I don't want to dodge the relevance question, which I appreciate is what the Court is looking for, but I just felt that was important to say, Your Honor, maybe to just vent about that.

In terms of relevance, Your Honor, let's put the amended complaint aside for the moment because we don't need to point to the amended complaint even though its not a close call under the amended complaint, but in terms of relevance, Your Honor, we have a Section 550 claim for recovery of our funds against Camshaft. Camshaft has alleged or has answered interrogatories and said we don't have the funds. That is not a conclusion -- that is not a finding of fact that this

Court has made, of course, Your Honor. We are asking for discovery as to where those funds went. It is directly relevant to their assertion that they don't have the funds.

Under 550 we have a claim for the property that was actually transferred or, alternatively, if Your Honor were to so order, the value of that property. Right now, we are focused on the property because we have an equitable interest in those funds. They have said they don't have it. Let's find out where those funds are. Its directly relevant as Your Honor already said when Your Honor took the bench to their assertion that they don't have it.

In addition to 550, Your Honor, its directly relevant to their mere conduit defense and I share the Court's views as to the ultimate merits of that mere conduit defense. They are a limited partnership, a separate corporate entity recognized under Delaware law. This wasn't money in a deposit at a bank. They clearly are not a mere conduit, but they have alleged that defense in a motion to dismiss and we get to see how they have -- on what terms they accepted these funds, from who they accepted these funds from, and who they released these funds to, and where those funds were transferred. The in and out of these funds, Your Honor, directly relevant to their meritless mere conduit defense that they have put at issue.

If we switch, Your Honor, to the amended

complaint, and it was timely filed within 21 days of service of the original complaint, but if we switch the amended complaint, Your Honor --

THE COURT: We don't have to get to that because I am just looking at Rule 15 and it says within 21 days after serving it or, under (b), if the pleading is one to which a responsive pleading is required, which a complaint is, 21 days after the service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier.

MR. FINESTONE: Thank you, Your Honor.

THE COURT: So, that certainly fits within the 21 days.

MR. FINESTONE: We had a right to amend.

THE COURT: Yes.

MR. FINESTONE: Your Honor, under the amended complaint this information is squarely relevant to the breach of fiduciary duty claim that we have advanced against our former sole director and officer. He is the individual who is responsible for every single one of these transfers, Your Honor.

First, on March 1st -- first in April and July of 2022 he made the investment into the Camshaft Fund. If the Court has had the opportunity to review our brief in support of our pending request for a restraining order you will see,

Your Honor, that we have collected a mountain of facts that suggest that in our mind confirm that that transfer, even if there were no second and third transfer, was a transfer with the intent to hinder, delay, defraud our creditors, Your Honor.

The Camshaft Fund appears to be nothing more then a sham. It is what it is, Your Honor. They have no employees. They used to be in an IHOP. They are now in an empty WeWork office. They represent on their website that there are two other -- three other individuals that work with Mr. Morton. Those three individuals deny having any substantive connection to Camshaft Fund. They have no assets that are material compared to the $533 plus million that Mr. Riju Ravindran transferred to the Camshaft Fund.

So, transfer number one, breach of fiduciary duty by Mr. Riju Ravindran. Transfer number two, from the -- they transferred the debtors interest in the Camshaft Fund to another entity Inspalearn who now had and interest in the Camshaft Fund. The debtor, of course, got nothing from it so that's breach of fiduciary duty and fraudulent transfer number two.

The fact I want to point out, Your Honor, is that the sole governor of Inspalearn its not his brother, Byju Ravindran, its him, its Riju Ravindran. So, he transferred this asset that -- his replacement asset for the $533 million

he transferred to another corporation after there were events of default that the debtor had conceded to, Your Honor, for no consideration and it was to himself, it was to another fund that he is the sole managing member of. It is one of the few things that we learned in their discovery responses.

Then this third transfer, Your Honor, it's now Inspalearn's interest. So, its Riju again transferring it on the petition date. The debtor has an equitable interest in those funds and Mr. Ravindran, notwithstanding the filing of this bankruptcy case, puts the money further away from the debtors estate into this offshore trust. That is all one continuing occurrence. That is all one breach of fiduciary duty that Mr. Ravindran is going to have to answer to.

The notion that the identity and the location of those funds is not relevant to that breach of fiduciary duty claim under our amended complaint would be a difficult one for me to argue if I was not on the other side, Your Honor, because in terms of pushing those funds far away from the debtors estate we are concerned that he pushed them as far as they possibly could go. We don't know that for sure, Your Honor, because all we know is that the entity has been described with three words offshore trust, but we don't know where that trust is, Your Honor. So, relevance is clear to us, Your Honor, under the initial complaint and the amended complaint.

Other than that, Your Honor, we would -- in terms of the status conference the only other thing I wanted to say there is another party here who I have been talking about, Mr. Riju Ravindran. He was supposed to produce documents and also agree to sit for a deposition. He hasn't produced any documents yet. I spoke to Mr. Cicero before the hearing and he said that some documents are forthcoming, Your Honor. And he has agreed to sit for a deposition in mid-March virtually.

I only raise it now, Your Honor, because this is the status conference for that -- for our motion for expedited discovery. I am unable to really address the Court about whether or not that projection is going to be acceptable or as deficient as some of his brethren's production. So, I just wanted to not waive anything because I'm not in a position to respond to it yet. So, we will look at those documents when we get it.

The last thing, Your Honor, is we just respectfully --

THE COURT: Before you move on from that I did look at those document discovery responses and I noticed that Mr. Ravindran is claiming he has, in response to most of them, no non-privileged documents in response. Do we have a timeline for production of a privilege log?

MR. FINESTONE: Your Honor, the -- it was -- there were stunning responses and objections. I agree with the

Court, they basically said you're getting nothing, not one document. That has been walked back about an hour ago. So, we are unable to -- I don't know whether its been completely walked back. I don't know what documents we are going to get, but, obviously, if there is going to be a privilege assertion we, as the debtor, will request and demand a privilege log, Your Honor.

THE COURT: It was in their objections, so I assume they didn't -- they said they had no non-privileged documents responsive to the request. So, I assume that means they have privileged documents. I think a privilege log would be appropriate.

MR. FINESTONE: Thank you, Your Honor. In terms of today I think that -- I guess what we would ask respectfully of the Court is that Camshaft, at the podium, identify the trust, identify the location of the trust, identify what assets that trust is holding; is it cash, is it some other in-kind asset. Who are the beneficiaries of this trust. Then we would respectfully request, Your Honor, at the Court's docket and calendar's earliest convenience a hearing for a temporary restraining order request.

THE COURT: Okay. Let me hear from Mr. Tol.

MR. VAN TOL: Sorry, Your Honor, I just had one brief point. Just to make my record, I understand Your Honor's inclination but the original complaint was served on

February 5th. Twenty-one days had elapsed before service of the amended complaint. Our motion to dismiss came in time after the amended complaint. So, it falls under neither 15(1)(a) or (b). That is my sole point, Your Honor.

THE COURT: Well, I think it does fall under (b) because its still a complaint, you still had an obligation to move or answer it and the 21 days doesn't run until you do so.

MR. VAN TOL: Our time to answer hadn't yet run, Your Honor. It was, I believe, some time in March.

THE COURT: So, that means they still have the right to amend.

MR. VAN TOL: Only within 21 days, Your Honor.

THE COURT: I disagree.

MR. VAN TOL: Okay.

THE COURT: I disagree with your reading. And I will rule on the motion for protective order, its overruled. You are going to produce the information that has been requested and you will do so by the end of the day today. If not then on Monday at 10 a.m. I will have a hearing on a motion for why I shouldn't issue an order to show cause and why I am not going to hold your client in contempt for refusing to produce the information.

MR. CICERO: Thank you, Your Honor. Joe Cicero on behalf of Mr. Ravindran.

I just wanted to note that, as Mr. Finestone said, we are working through getting documents. Initially in the objections, you know, our client is abroad so there is always a day delay. So, we had our response due on Monday of this week, which complied with your Court's order based upon subpoena that was served. We have been working hard on that.

We've had questions to the client back and forth quite a bit, needed to get those responses out, but other papers have come in, in this case that have lead us to ask additional questions and that is part of the reason why we have explored other areas of where documents might be. So, we do have documents to produce.

I told Mr. Finestone this morning as soon as we concluded this that we will produce those next week and that Mr. Ravindran is available the March 14th or 15th for a deposition. So, we are moving pretty quickly. Not as quickly as the other side would like, but quickly to get Mr. Ravindran to sit for a deposition on this. If there are privileged documents -- and part of the reason we are trying to get all these documents from abroad, if there are privileged documents, we will log those documents.

THE COURT: Okay. Anybody else?

MR. FINESTONE: Ben Finestone, proposed counsel to the debtors-in-possession, Your Honor.

I just rise again to see if we couldn't get

something on the Court's calendar.

THE COURT: Yes, we need to do the TRO. We have -- Wednesday we have a hearing already, the second day hearing in the bankruptcy case and that is not scheduled till three, but I will schedule a hearing on the TRO for 10 a.m. that morning on Wednesday, March 6th. Does that work for the parties?

MR. FINESTONE: Your Honor, I think that they can respond. I think there is a prospect of us not needing the Wednesday 3 p.m. slot and I do know that -- well, our TRO, in large part, relies on the first day declaration, but we certainly are going to have Mr. Pohl available at the hearing if the Court has any questions in addition to the first day declaration. Three p.m. would be better for that and I don't think we needed much for the omnibus bankruptcy stuff. I think we are going to kick the DIP financing hearing. So, could we have the 3 p.m. slot for the TRO?

THE COURT: That's fine with me if you think you can get it done in that -- I just wanted to make sure that you had enough time, if it's going to be an evidentiary hearing, to get it done.

MR. ENOS: Your Honor, Ken Enos for the debtor.

I rise just to say but for the TRO, and obviously with the Court's consent, I would expect that we would have canceled the second day hearing. So, I think that should

provide sufficient time.

THE COURT: Mr. Van Tol.

MR. VAN TOL: Your Honor, unfortunately I am caught between two Courts. I have a Court hearing, in-person, in Albany at 9:15 on the 6th. In theory I could make it back here by 3 p.m., but if the Court has even an earlier date. I am not trying to delay. I could be available the 5th, I could be available the 7th. It just so happens that the 6th is the date that I can't make.

MR. CICERO: May I chime-in too, Your Honor, on scheduling. Mr. Korpus, who is lead counsel for my client, is actually in Federal Court also on Wednesday. I just received a message from him. I will be out of town. I am happy to cancel those plans, but if Mr. Korpus can't be available, I think that would be a disservice to the client.

I don't -- we are not trying to delay this, you know, for the purpose of delaying the TRO; that is just a fact. What I was going to say today, and this may be tough now based upon what you are looking at on your calendar, is that Mr. Korpus's son's bar mitzvah is this weekend and all his family from New Zealand have flown in. I was going to ask for a due date for our opposition to be Tuesday, but if you are looking at a Wednesday that would be problematic. I only just want to note that for the Court if you have something later that week, we could make that work.

THE COURT: I don't have later that week. Its either Monday, Tuesday or Wednesday.

MR. FINESTONE: Monday or Tuesday would work fine for the debtors, Your Honor.

THE COURT: Tuesday, I have a 10 a.m. that I think is coming off and I have a 3 p.m. that also may come off. It's actually one of Mr. Enos's colleagues client's case Sientra (phonetic). Can you see if there is any chance that is going to come off?

MR. ENOS: Of course, Your Honor. I can find out.

THE COURT: Okay. Let me see if that is coming off. I know the 10 a.m. is definitely going to come off.

MR. FINESTONE: Shall we just pencil in 10 a.m., Your Honor?

THE COURT: Let's do 10 a.m. I have something at noon, but I can probably cancel that if I have to. So, let's say at 10 a.m. on Tuesday which means responses are going to be due -- when will the parties like to have responses? I know Mr. Korpus is out this weekend, but we are kind of between a rock and a hard place.

MR. CICERO: Yeah, that's the problem, Your Honor. I mean we have started a draft, but we need Mr. Korpus's input. I don't know if -- I would love to, at least, have half a day Monday. I see Mr. Korpus is on the screen.

THE COURT: Mr. Korpus.

MR. KORPUS: Your Honor, can you hear me okay?

THE COURT: I can. Thank you.

MR. KORPUS: Thank you, Your Honor. I apologize for imposing my personal schedule on the Court. It is a once in a lifetime event unfortunately.

I am just trying to look at this, if we could go to the Wednesday at 3 p.m. I am in a hearing in the Eastern District of Pennsylvania at 10 a.m., but if that's over by I could then take the train down to Delaware, be there by 3. That will, at least, give us the ability to get in our papers on Tuesday so that I can deal with them on Sunday and Monday. If that works for everybody else that would be better for me then Tuesday.

THE COURT: Mr. Van Tol.

MR. VAN TOL: Your Honor, I don't want to be the fly in the works, I will make sure I get here.

THE COURT: Okay.

MR. VAN TOL: I will drive quickly.

THE COURT: Okay. We will set it for -- the hearing will then be at 3 p.m. on Wednesday, March 6th. Responses will be due Tuesday at -- are you going to ask for a reply, Mr. Finestone? I will give you leeway at the hearing if --

MR. FINESTONE: Yeah, I don't really think we need a reply, Your Honor. I think this is going to be an

evidentiary hearing and I -- when did they say they were filing their opposition, Tuesday by noon?

THE COURT: I hadn't set a time yet. That is why I was trying to figure out what time.

MR. FINESTONE: The reality of this -- if I could just say, Your Honor, I understand Camshaft is not knowing anything. If Mr. Ravindran can give some pledge in this courtroom that this money is not going anywhere then we can do this on Thursday or on Friday. I don't --

THE COURT: I don't have time Thursday or Friday.

MR. FINESTONE: Okay. So, Wednesday at 3 p.m. it is. We will put a reply in, if any. Does Your Honor have any time to read it Wednesday morning?

THE COURT: Well, let me ask, Mr. Korpus, what time would you like to have your response due on Tuesday?

MR. KORPUS: If we could file it -- so, I guess the client would need to look at it. I think if we could get it in by 2 p.m. or something would that work.

THE COURT: That's fine, 2 p.m. Responses are due 2 p.m. on the 5th. Then if you want to file a reply in that short period of time that you will have that's fine, as long as you give me enough time to actually read it before we got to the hearing; otherwise, you might as well just make your arguments at the hearing.

MR. FINESTONE: Thank you, Your Honor. If we do

put in a reply it will be short and we will get it in before noon.

THE COURT: Okay. Thank you.

MR. FINESTONE: Thank you, Your Honor.

THE COURT: So, anything else we need to schedule?

MR. SHANKAR: Your Honor, Ravi Shankar from Kirkland & Ellis on behalf of GLAS Trust Company.

Your Honor, we wanted to pose to you that our motion to intervene at Docket No. 14 of the adversary is fully briefed. I raise that, Your Honor, in light of the TRO scheduling for Wednesday. We would like the opportunity to be heard on the TRO. We understand Camshaft has lodged an objection. We filed our reply this morning, Your Honor, so the briefing could be fully completed. We don't think that there is a reason for GLAS, as a key stakeholder in this adversary, not to be heard.

THE COURT: Mr. Van Tol, has your client objected to the intervention?

MR. VAN TOL: We did, Your Honor, on the grounds that it would be futile because of our motion to dismiss, but, again, I don't want to keep GLAS from making whatever arguments they make. So, if Your Honor wants to order that they are allowed to intervene we won't stand in the way.

THE COURT: All right. Then I will grant the motion to intervene. We will enter the order.

MR. SHANKAR: Thank you, Your Honor.

THE COURT: So going back to making sure that this discovery happens, as I said the information Camshaft has been requested to produce has to be produced by the end of the day today. If it is not produced, I will have a -- I am going to set it for a status conference at 1 p.m. on Monday. As a part of that status conference, as I said, I will consider whether or not I am going to issue a notice to show cause if the documents aren't produced and the interrogatories aren't answered.

I would expect -- Mr. Morton is the name of the party who controls Camshaft?

MR. VAN TOL: That's right, Your Honor.

THE COURT: I would request that he be in the courtroom for that hearing.

MR. VAN TOL: At 1 p.m. on Monday. I don't know what his schedule is, obviously, but I will relay that information and how important it is for him to be here, Your Honor.

THE COURT: I think it will be very important for him to be here. I think he needs to hear it from me directly.

MR. VAN TOL: Understood, Your Honor. Thank you.

THE COURT: Hopefully we won't have to have the hearing. If the documents are produced and you're satisfied, you let me know, and we will take the hearing off for Monday.

MR. VAN TOL:  Understood, Your Honor.  Thank you.

THE COURT:  Anything else?

(No verbal response)

THE COURT:  Thank you all very much.  We are adjourned.

(Proceedings concluded at 11:43 a.m.)

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ William J. Garling                    March 1, 2024

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable