**EXHIBIT E**

**March 4, 2024 Transcript**

\\4163-8548-8207 v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Chapter 11
                                    .  Case No. 24-10140 (JTD)
BYJU'S ALPHA, INC.,                 .
                                    .
            Debtor.                 .
. . . . . . . . . . . . . . . . . .  .
                                    .
BYJU'S ALPHA, INC.,                 .
                                    .
         Plaintiff,                 .  Adv. Pro. No. 24-50013 (JTD)
                                    .
     v.                             .
                                    .
CAMSHAFT CAPITAL FUND, LP           .
CAMSHAFT CAPITAL ADVISORS,          .  Courtroom No. 5
LLC, AND CAMSHAFT CAPITAL           .  824 North King Street
MANAGEMENT, LLC,                    .  Wilmington, Delaware 19801
                                    .
         Defendant.                 .  Monday, March 4, 2024
. . . . . . . . . . . . . . . . . .  .  2:00 p.m.

TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Kenneth Enos, Esquire
                         YOUNG CONAWAY STARGATT & TAYLOR LLP
                         Rodney Square
                         1000 North King Street
                         Wilmington, Delaware 19801
(APPEARANCES CONTINUED)

Audio Operator:          Sharon A. Page, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the Debtor:                Benjamin Finestone, Esquire
                               QUINN EMANUEL URQUHART
                                  & SULLIVAN LLP
                               51 Madison Avenue
                               22nd Floor
                               New York, New York 10010

For Camshaft:                  Pieter Van Tol, Esquire
                               HOGAN LOVELLS US LLP
                               390 Madison Avenue
                               New York, New York 10017

For Riju Ravindran:            Sheron Korpus, Esquire
                               KASOWITZ BENSON TORRES LLP
                               1633 Broadway
                               New York, New York 10019

(Proceedings commenced at 2:01 p.m.)

(Call to Order of the Court)

THE COURT: Good afternoon. Thank you. Everyone may be seated.

Mr. Enos.

MR. ENOS: Good afternoon, Your Honor. Ken Enos, Young Conaway Stargatt & Taylor, here on behalf of the debtor.

Your Honor, we are here today with respect to the Court's request for a status conference if we were not provided any discovery responses. Parties have been communicating with the Court all weekend and as I believe the Court knows, no discovery responses were provided and with that I would leave it to the Court to direct where we go from here.

THE COURT: Let me hear from Mr. Tol as to why my order was not complied with.

MR. VAN TOL: Good afternoon, Your Honor. Pieter Van Tol from Hogan Lovells for the Camshaft defendants.

First, I want to start with an apology for the fact that my client is not here today. I understood Your Honor's order that he appear. He is overseas and was not able to make it. He was actually on his way by the time Your Honor's order came out.

As to the documents, Your Honor, we made a -- we

communicated with our --

THE COURT: When did he leave the country?

MR. VAN TOL: He left Friday before the hearing ended, Your Honor.

THE COURT: Was he on the hearing at that time?

MR. VAN TOL: Not when Your Honor ordered him to appear.

THE COURT: Well, I don't think I ever ordered him to appear.

MR. VAN TOL: I'm sorry, I didn't hear you.

THE COURT: I don't think I ordered him to appear. I said it would be in his best interest for him to appear.

MR. VAN TOL: I understand, Your Honor.

THE COURT: Go ahead.

MR. VAN TOL: As to the question of the documents, as officers of the Court, we advised Mr. Morton that he should produce the documents, he should produce the information, he declined. That is where we are today.

THE COURT: He is the only one who possesses the documents that you are aware of?

MR. VAN TOL: That I am aware of.

THE COURT: So, he hasn't turned them over to anyone at the firm?

MR. VAN TOL: Your Honor, we have some incomplete information, but in order to answer the interrogatories and

document requests we would need Mr. Morton's cooperation.

THE COURT: Do we know if Mr. Morton is planning on returning to the United States or has he absconded?

MR. VAN TOL: My understanding, Your Honor, is that he does plan to return. I asked him when, pursuant to Your Honor's inquiry, it was unclear because there are meetings going on where he is involving BYJU's. He made it sound like it would be days, but, again, I don't want to make a representation that I can't then back up. As far as I know, Your Honor, he has not absconded.

THE COURT: Does he have separate counsel?

MR. VAN TOL: Does he have separate criminal counsel, Your Honor?

THE COURT: Any counsel, criminal or civil.

MR. VAN TOL: I believe he has separate criminal counsel, but I don't know who that is.

THE COURT: Do you know when he retained them?

MR. VAN TOL: I believe last week, Your Honor.

THE COURT: Okay. Let me hear from the debtors.

MR. FINESTONE: Good afternoon, Your Honor. Ben Finestone, Quinn Emanuel, counsel to the debtors-in-possession.

Your Honor, if today were hypothetically an order to show cause we would submit that Mr. Morton and Camshaft should be held in contempt of Court for its failure to comply

with a series of Court orders. It is not -- today is not technically a hearing on an order to show cause.

We have come, Your Honor, with a proposed order to show cause and we would suggest that I believe the Court may have had a Wednesday 10 a.m. slot for that hearing to take place. I guess, Your Honor, a couple of points that I just want to make because I think it's the debtor's view, Your Honor, that this isn't unfortunately just about Mr. Morton and his willingness to flaunt Court orders. There is, obviously, somebody else behind Mr. Morton funding his efforts.

The last correspondence that I saw from counsel for Mr. Morton to the Court was really alarming to the debtors in the sense that it said something along the lines, Your Honor, of the reason why I am out of the country -- the I that I am speaking with is Mr. Morton. The reason why I, Mr. Morton, and am out of the country is because I am tending to issues concerning BYJU's which is the insider controlling the former affiliate of the debtor-in-possession and likely, in everyone's sense, the beneficiary of the fraudulent transfer. The only involvement that we are aware of that Mr. Morton has had with any affairs of the debtor or the enterprise is being the parking lot for the $533 million.

So, the suggestion that he is overseas tending to issues with BYJU's sounds like he's talking about where else

this money may get put to use and we can all bet, with great confidence, that one of those proposed uses is not going to be to fund or to be returned to the debtor's estate. So, the issues are intertwined.

I also have, Your Honor, if I may approach, an article from the Times of India. May I approach, Your Honor?

THE COURT: Yes.

MR. FINESTONE: Okay.

THE COURT: Thank you. Go ahead.

MR. FINESTONE: The concerning thing here, Your Honor, just for the record, is the fact that the interrogatories that were providing to the debtors, the limited responses that we did get to our discovery was that our funds were placed in an offshore trust and they were placed in that offshore trust, just to refresh everyone's recollection, by a former affiliate of the debtor called Inspilearn LLC, a Delaware LLC. And the corporate governor of Inspilearn LLC, to further refresh everyone's recollection, was Riju Ravindran who was the debtor's former director and officer.

So, we got these interrogatory answers served on us telling us that Inspilearn doesn't have the cash it put in an offshore trust and now we have today's article from the Times of India in which it appears that Riju's brother, Byju, or at least his corporate enterprise, is saying something

inconsistent with the interrogatories that were served on the debtor under penalty of perjury.  He is saying, no, the cash is held by the Think and Learn subsidiary, Inspilearn LLC, the Delaware LLC itself.

Now in some respects if he is telling the trust to this article, Your Honor, that is good news for the debtor because it means the cash is within the power of one of the entities that is going to answer our TRO request and will be in Court on Wednesday. If we satisfy the Court and the Court is willing to enter the order that we are requesting the Court to enter on Wednesday there should be no reason why Inspilearn LLC can't return the cash.

So, in substance maybe this is good. In process its very, very concerning because its inconsistent with the interrogatories that were served on us and we really don't know which one to believe, Your Honor.  And so, Your Honor, I think what we would ask, if I could approach again, is to again have the Court consider entering an order to show cause asking Mr. Morton, but also Riju Ravindran, to appear in Court on Wednesday to explain why they shouldn't be held in contempt of Court.

Finally, Your Honor, Mr. Mortan, again, a bit less important to us then Mr. Ravindran, both important because we know very little, but Mr. Ravindran promised us some responses to the discovery requests that we had served on him

last week pursuant to Your Honor's order.  We were supposed to get responses today because Your Honor will remember the initial responses we got said, in fancy legal words, you're going to get nothing.  Here we are Monday and we still have had nothing, Your Honor.

So, our request is that the Court enter an order to show cause that both Mr. Ravindran and that Mr. Morton appear in Court on Wednesday, if the Court still has some time on its calendar and explain to Court under oath why they shouldn't be held in contempt of Court, Your Honor. If I may approach, I would hand up a proposed order to show cause.

THE COURT:  I will take a look at it.

MR. FINESTONE:  Thank you.

MR. KORPUS:  Your Honor, if I may be heard.  Its Sheron Korpus here.

THE COURT:  Sure.  Hold on one second, Mr. Korpus.

(Pause)

MR. FINESTONE:  I don't like when people speak to me while I'm reading something, so I apologize, but this proposed order the debtors would request to amend slightly to include Mr. Ravindran in view of the fact that he also has not provided any discovery to us and in view of the statements in the Times of India and the statement to this Court that Mr. Morton is overseas discussing our money with the BYJU's enterprise, Your Honor.

THE COURT: All right. Well, it might be premature to add Mr. Ravindran at this time until I see what the discovery responses are.

Anything else before I let Mr. Korpus speak?

MR. FINESTONE: Unnecessarily so, Your Honor, I will just close with both the Delaware's adoption of the Uniform Voidable Transactions Act and the Florida's adoption of the Uniform Voidable Transactions Act both include and recite 11 badges of fraud. And within those 11 badges of fraud -- so far, I am saying something that is completely unremarkable, Your Honor. But within those 11 badges of fraud, we have concealment of the transfer itself and we saw lots of that prepetition, Your Honor, and there is another badge that says concealment of the asset, the location of the asset and we are seeing -- we saw lots of that prepetition as well, nearly a year of it, Your Honor.

I just -- the way the debtors are feeling now is there is a 12th badge of fraud that maybe warrants amendment to the Uniform Voidable Transactions Act and it's really the supreme badge of fraud. It is continued concealment of the location of the fraudulently transferred act during the pendency of the litigation. We have not seen anything like this, Your Honor, and we very much appreciate the Cour's attention to the matter.

THE COURT: Thank you, Mr. Finestone.

Mr. Korpus, go ahead.

MR. KORPUS: Your Honor, I do not need to (indiscernible) to it Mr. Ravindran to the order. I was just going to say that I am hearing everything here for the first time. I have not seen the order. I have not heard a response from Quinn Emanuel over the weekend. I have not heard anything about the gentleman from Camshaft being on the plane or any of this. And as far as I knew, this was just a status conference for the Camshaft matter. We are still working on responses and that is all I was going to say. If you are not planning to add Mr. Ravindran then we are fine and we will be seeing you on Wednesday.

I also wanted to remind Your Honor that, unfortunately, I have another hearing on Wednesday at 10 a.m., so I will not be able to attend at 10. I will be going from that hearing to a 3 p.m. hearing on Wednesday.

THE COURT: Okay. Thank you, Mr. Korpus.

MR. KORPUS: Thank you, Your Honor.

THE COURT: Mr. Van Tol.

MR. VAN TOL: On the order to show cause my concern is just one of due process. My client is out of the country. I am also unavailable at 10 a.m. on Wednesday. So, if there is to be an order to show cause hearing, I would respectfully request that it be later.

Thank you, Your Honor.

THE COURT: Well, I came into this extremely disappointed that Mr. Morton decided not to comply with my order to provide the requested information to the debtors. And I had planned on telling everyone that I am going to issue an order to show cause this afternoon as to why I shouldn't hold Camshaft defendants and Mr. Morton in contempt for failing to comply with that order.

You know, I probably am going to add a little bit more to what you have provided me, Mr. Finestone, because I want to make sure its absolutely clear to Mr. Morton that one of the possible remedies, I am going to impose for the contempt is civil confinement if he doesn't comply with the order. And I want to give him the opportunity to be heard on that before I impose that penalty.

So, I will set a hearing, and it will be in the form of order that I issue this afternoon, for the 14th of March on the contempt motion -- on the order to show cause, I should say, of why I shouldn't hold Mr. Morton in contempt. The remedies include, you know, in addition to civil confinement, you know, I can impose fines on both Mr. Morton and Camshaft in order to compel them to comply with the order.

In this situation its obvious that Mr. Morton is the only one who controls Camshaft. He is the one who has the information, he is the one who is going to have to

provide it. I am not sure that imposing civil monetary penalties against Camshaft is going to result in anything, I don't know if Camshaft even has any assets available at this time, but I certainly think that Mr. Morton should think long and hard before I have a contempt hearing that might result in him being confined until he decides to comply.

So, with that do we have anything else today? Like I said, I will issue that order this afternoon.

I would ask, Mr. Van Tol, that you provide a copy of that order to Mr. Morton.

MR. VAN TOL: I will right away, Your Honor. Thank you.

THE COURT: Thank you. Anything else before we adjourn?

MR. FINESTONE: Not from the debtor, Your Honor.

THE COURT: Mr. Van Tol.

MR. VAN TOL: No thank you, Your Honor.

THE COURT: Thank you all very much. We are adjourned.

(Proceedings concluded at 2:16 p.m.)

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ William J. Garling                        March 4, 2024

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable