# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>BYJU's ALPHA, INC.,[1]<br>                         Debtor. | Chapter 11<br><br>Case No. 24-10140 (JTD) |
| BYJU'S ALPHA, INC.,<br>                         Plaintiff,<br><br>v.<br><br>CAMSHAFT CAPITAL FUND, LP,<br>CAMSHAFT CAPITAL ADVISORS, LLC,<br>CAMSHAFT CAPITAL MANAGEMENT, LLC,<br>RIJU RAVINDRAN, INSPILEARN LLC, and<br>THINK AND LEARN PRIVATE LIMITED,<br><br>                         Defendants. | Adv. Pro. Case No. 24-50013 (JTD)<br><br>**Related Adv. D.I.**: 151, 153 |

## CAMSHAFT DEFENDANTS' REPLY MEMORANDUM
## OF LAW IN FURTHER SUPPORT OF MOTION TO
## DISMISS CLAIMS IN SECOND AMENDED COMPLAINT

HOGAN LOVELLS US LLP
Pieter Van Tol (admitted *pro hac vice*)
Christopher R. Bryant (admitted *pro hac vice*)
Elizabeth Carter (admitted *pro hac vice*)
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email: pieter.vantol@hoganlovells.com
        chris.bryant@hoganlovells.com
        elizabeth.carter@hoganlovells.com

SAUL EWING LLP
Evan T. Miller (No. 5364)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6864
Email: evan.miller@saul.com

*Additional Counsel Listed on Next Page*

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 case is: 1007 N. Market St. Ste. G20 452, Wilmington, Delaware 19801.

\\4158-3787-5792 v1

| | |
|---|---|
| and | and |
| HOGAN LOVELLS US LLP<br>David Massey (*admitted pro hac vice*)<br>600 Brickell Avenue<br>Suite 2700<br>Miami, FL 33131<br>Tel: (305) 459-6500<br>Email: david.massey@hoganlovells.com | SAUL EWING LLP<br>Turner N. Falk (admitted *pro hac vice*)<br>Centre Square West<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102-2186<br>Tel: (215) 972-7777<br>Email: turner.falk@saul.com |

*Counsel for Camshaft Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .......................................................................................................................3

I.  The $533 Million Transfer to the Camshaft Fund in 2022 Was Not With Actual Fraudulent Intent or to an Initial Transferee ...............................................................3

    A.  Plaintiffs Have Not Sufficiently Pled Actual Intent to Defraud ............................. 3

        i.  The Allegations Regarding Direct Evidence of Fraud Do Not Relate to the Initial Transfer .................................................................... 3

        ii.  The "Badges of Fraud" Allegations Do Not Plausibly Support the Actual Fraudulent Transfer Claim ............................................................ 4

    B.  The Camshaft Fund Was a "Mere Conduit" and Is Not an Initial Transferee for Purposes of a Fraudulent Transfer Claim........................................ 7

    C.  Camshaft Advisors and Camshaft Management Were Not Initial Transferees................................................................................................ 8

II.  The Claims for Constructive Fraudulent Transfers Are Deficient Because Plaintiffs Cannot Show That the Debtor Failed to Receive REV ........................................9

    A.  The Allegations in Count II Are Insufficient as a Matter of Law.......................... 9

    B.  The Allegations in Count III Are Insufficient as a Matter of Law ....................... 11

III.  The Exculpation and Indemnification Provisions in the Second Amended & Restated LPA Preclude the Constructive Fraudulent Transfer Claims..............................12

IV.  The Declaratory Judgment Claim Improperly Includes the Camshaft Defendants (Count VIII) ...................................................................................................13

V.  Plaintiff Has Not Adequately Alleged a Willful Violation of the Automatic Stay (Count XI) .....................................................................................................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994) ............................................................................................. 7

*Carson v. Experian Info. Solutions, Inc.*,
  2019 WL 3073993 (C.D. Cal. July 9, 2019) ................................................................ 10

*Image Masters, Inc. v. Chase Home Fin.*,
  489 B.R. 375 (E.D. Pa. 2013) ....................................................................................... 10

*In re F-Squared Inv. Mgmt., LLC*,
  600 B.R. 294 (Bankr. D. Del. 2019) ............................................................................. 10

*In re Lenox Healthcare, Inc.*,
  343 B.R. 96 (Bankr. D. Del. 2006) ................................................................................. 8

*In re R.M.L., Inc.*
  92 F.3d 139 (3d Cir. 1996) ........................................................................................... 10

*In re Roca*,
  404 B.R. 531 (Bankr. D. Ariz. 2009) ............................................................................. 4

*In re TC Liquidations LLC*,
  463 B.R. 257 (Bankr. E.D.N.Y. 2011) ....................................................................... 3-4

*In re TSIC, Inc.*,
  428 B.R. 103 (Bankr. D. Del. 2010) ............................................................................. 11

*In re Twitter, Inc. Sec. Litig.*,
  506 F. Supp. 3d 867 (N.D. Cal. 2020) .......................................................................... 10

*Strobel v. Rusch*,
  431 F. Supp. 2d 1315 (D.N.M. 2020) ........................................................................... 12

**Statutes**

11 U.S.C. § 550(a)(1) ............................................................................................................ 1

28 U.S.C. § 2202 ................................................................................................................. 13

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................... 1

\\4158-3787-5792  v1

Defendants Camshaft Capital Fund, LP (the "Camshaft Fund"), Camshaft Capital Advisors, LLC, ("Camshaft Advisors"), and Camshaft Capital Management, LLC ("Camshaft Management") (collectively, the "Camshaft Defendants") respectfully submit this reply memorandum of law, along with the Reply Declaration of Pieter Van Tol dated May 29, 2024, in further support of their motion (the "Motion") to dismiss the claims against the Camshaft Defendants in the second amended complaint (the "SAC") filed on April 24, 2024 [Adv. D.I. 151] by Plaintiff BYJU's Alpha, Inc. (the "Debtor") and joined by Intervenor-Plaintiff GLAS Trust Company LLC (collectively, the "Plaintiffs").[2]

## PRELIMINARY STATEMENT

In their opposition to the Motion (the "Opposition"), Plaintiffs fail to demonstrate that any of the claims in the SAC are cognizable as a matter of law.

*Counts I-III (Fraudulent Transfer)*

The fraudulent transfer claims are deficient for several reasons:

*First*, there is no direct evidence of fraud by the Camshaft Defendants and the circumstantial "badges of fraud" cited by Plaintiffs do not meet the particularity standard under Rule 9(b) of the Federal Rules of Civil Procedure.

*Second*, Plaintiffs cannot establish that any of the Camshaft Defendants were initial transferees under Section 550 of the Bankruptcy Code, 11 U.S.C. § 550(a)(1). Plaintiffs still have not shown that the Camshaft Fund had "dominion and control" over the Alpha Funds and the Camshaft Fund's dispositive defense that it was a "mere conduit" is supported by the references in the SAC to the Debtor's description of the Alpha Funds as "cash" or "bank" in its financial records for 2022. While Plaintiffs claim that those records are inaccurate, they recently relied on

---

[2] Any terms that are not defined below shall have the same meaning as in the Motion. References to "Mot." are to the memorandum of law in support of the Motion.

the very same documents in arguing that they are probative of which BYJU's entity holds the Alpha Funds. Plaintiffs cannot embrace those financial records to support their claims against Riju Ravindran and others, but seek to reject them in connection with their claims against the Camshaft Fund. With respect to Camshaft Advisors and Camshaft Management, Plaintiffs do not provide any support for their claim that those entities are also initial transferees of the Alpha Funds.

*Third*, the constructive fraudulent transfer claims founder because (a) it is clear that, as a matter of law, the Debtor received reasonably equivalent value ("REV") in exchange for the initial transfer of the Alpha Funds; (b) Plaintiffs cannot blame Camshaft Advisors and Camshaft Management for the lack of specificity in Count III, given that they did not pursue any discovery on the fees issue before filing the SAC; and (c) the claims in Counts II and III are barred by the exculpation and indemnification provisions in the Second Amended & Restated LPA.

*Count VIII (Declaratory Judgment)*

Plaintiffs argue that the declaratory judgment claim against the Camshaft Defendants is proper because the latter entities have an "interest" in the Alpha Funds or the Debtor's acquisition of the limited partnership interests in 2022. The Camshaft Defendants, however, are not asserting any right or interest in the Alpha Funds or the Debtor's former limited partnership interests. There is, therefore, no controversy between Plaintiffs and the Camshaft Defendants that must be determined through the declaratory judgment process. That claim instead focuses on whether the Debtor had the right to make the second transfer to Inspilearn LLC ("Inspilearn"). If the Debtor succeeds on its claim, the limited partnership interest would revert to the Debtor and the Camshaft Defendants would not have any ownership right over the interest.

*Count XI (Violation of Automatic Stay)*

Plaintiffs try to avoid the case law holding that parties cannot allege automatic stay violations on "information and belief" by arguing that they did not have access to the facts relating

2

to the timing of the third transfer of the Alpha Funds prior to filing the SAC. Plaintiffs, however, knew from the Camshaft Defendants' interrogatory responses on February 23, 2024 that the third transfer was on February 1, 2024. Rather than serving follow-up discovery before filing the SAC, the Debtor chose to make its allegations on "information and belief" and only then pursue discovery on whether the transfer took place before or after the filing of the bankruptcy petition (the "Petition"). If the Debtor had sought such discovery earlier, it would have learned that the third transfer was before the Petition's filing. Thus, the cases precluding the assertion of stay violation claims on "information and belief" apply with full force here.

In sum, the SAC should be dismissed because it does not state any cognizable claim against the Camshaft Defendants.

## ARGUMENT

### I. The $533 Million Transfer to the Camshaft Fund in 2022 Was Not With Actual Fraudulent Intent or to an Initial Transferee

#### A. Plaintiffs Have Not Sufficiently Pled Actual Intent to Defraud

Plaintiffs argue that the claims Count I in the SAC against the Camshaft Defendants should survive because there is direct evidence of the Debtor's intent to defraud and circumstantial evidence through several "badges of fraud." (*See* Opp'n, 11-16.) That is not the case.

> *i. The Allegations Regarding Direct Evidence of Fraud Do Not Relate to the Initial Transfer*

As direct evidence of fraudulent intent, Plaintiffs rely on purported statements by Byju Raveendran that the Debtor had moved the Alpha Funds and the Lenders would never find them. (*Id.*, 12 (citing SAC ¶¶ 10, 115).) Those statements were allegedly made in May 2023, but Plaintiffs' claims against the Camshaft Defendants arise solely out of an initial transfer of the Alpha Funds that was completed nine months earlier (in July 2022). The courts have held that the relevant time period for an assessment of the debtor's intent is the time of the transfer. *See In re*

3

*TC Liquidations LLC*, 463 B.R. 257, 276 (Bankr. E.D.N.Y. 2011); *In re Roca*, 404 B.R. 531, 543 (Bankr. D. Ariz. 2009).  Statements made nine months after the completion of the initial transfer (and more than a year after the first movement of funds in April 2022) are in no way contemporaneous.  Moreover, Mr. Raveendran's alleged statements came on the heels of the second transfer of the Alpha Funds to Inspilearn in March 2023.  It is obvious that such statements (if they were in fact made) referred to the second transfer to Inspilearn, not the initial transfer from the Debtor to the Camshaft Fund.

Plaintiffs try to cure this deficiency by stating in the Opposition that they "now understand" that Mr. Raveendran was referring to Camshaft.  (Opp'n, 12.)  Statements in a brief, however, are not a substitute for allegations in a pleading and, in any event, Plaintiffs could not plausibly allege that Mr. Raveendran's statements related to the initial transfer.  Thus, there is no direct evidence here that the Debtor intended to defraud creditors through the initial transfer to the Camshaft Fund.

> ii.   The "Badges of Fraud" Allegations Do Not Plausibly Support the Actual Fraudulent Transfer Claim

Plaintiffs misstate the Camshaft Defendants' position on the six "badges of fraud," arguing, for example, that they effectively concede three of them.  (Opp'n, 13.)  The Camshaft Defendants have made no such concession.

Below are the relevant allegations in the SAC against the Camshaft Defendants regarding the so-called "badges of fraud" for the initial transfer (not the subsequent transfers) and the Camshaft Defendants' position on each.

*First Badge*

"The transfers were concealed.  Defendants never disclosed any of the transfers to the Lenders, and, in fact, concealed the transfers in quarterly financial reports by disclosing that the Debtor purported to have over $[redacted] million in "Cash and Bank."  The transfers to Camshaft Fund were neither "cash" nor "bank."  Moreover, Camshaft concealed the transfers by mispresenting to

the Florida court that the Debtor still owned the Alpha Funds after the funds had been transferred to Inspilearn months earlier." (Adv. D.I. 153, ¶ 158.)[3]

There was no concealment of the initial transfer. Plaintiffs allege in the above paragraph that it was deceptive for the Debtor to state in quarterly financial reports that it held the Alpha Funds as "Cash and Bank" because, according to Plaintiffs, the Alpha Funds invested with the Camshaft Fund were neither "cash" nor "bank." But those disclosures accurately stated that the Alpha Funds remained in the Debtor's possession. Indeed, at a recent hearing, counsel for GLAS extensively cited the quarterly financial reports for 2022 and the fact that they accurately showed the Alpha Funds as remaining in the Debtor's possession. Counsel for GLAS questioned Riju Ravindran on why he did not look for similar reports for later periods to track the whereabouts of the Alpha Funds. Plaintiffs cannot have it both ways. They cannot claim that the quarterly financial reports constitute a concealment of the Alpha Funds, but, at the same time, are evidence of which BYJU's entity possesses those funds. Accordingly, the allegations regarding the first "badge of fraud" are implausible and do not support the claim of actual intent.

*Second Badge*

"The transfers were of substantially all of the Debtor's assets. In mid-2022, the Debtor transferred the Alpha Funds—over 80% of its liquid assets to Camshaft Fund." (*Id.*)

The 2022 transfers are not indicative of fraud, but rather the fact the Debtor was a special purpose vehicle with no employees, operations or other assets. Instead, it was created to facilitate the movement of funds to BYJU's entities, including investment of the Alpha Funds. The fact that the Debtor invested the Alpha Funds simply shows that it was fulfilling its purpose.

---

[3] The redacted portion of Paragraph 158 refers to "over $500 million." GLAS's counsel recently relied on documents with similar figures in open Court, so any claims to confidentiality have been waived.

*Third Badge*

"The transferred assets were concealed. Defendants have taken every opportunity to conceal the location of the Alpha Funds, including flaunting [*sic*, flouting] the Court's discovery orders. Camshaft and Morton have been held in contempt for failure to provide discovery regarding the Alpha Funds, yet they still have not complied with the Court's discovery orders." (*Id.*)

The alleged discovery violations referenced above relate to the third transfer on February 1, 2024. The Camshaft Defendants have produced interrogatory responses and documents relating to the initial transfer (and the second transfer). Moreover, to the extent that the third badge refers to the current location of the Alpha Funds, the Camshaft Defendants' interrogatory responses clearly state that the Camshaft Fund no longer has custody of the funds. (*See* Adv. D.I. 28-4.)

*Fourth Badge*

"The Debtor received less than reasonably equivalent value in return. Pohl has no record of the Debtor receiving any consideration from Camshaft; even if there was consideration in the form of an illiquid limited partnership interest, it was inadequate, as summarized in Count Two." (Adv. D.I. 153, ¶ 158.)

As discussed below, the Debtor received consideration in exchange for the initial transfer in the form of an appreciation in the value of the Alpha Funds. (*See infra*, 9-11.)

*Fifth Badge*

"Debtor immediately became insolvent post-transfers, if it was not already insolvent. Post-transfers, the Debtor had over $1.2 billion in liabilities against less than a tenth of that amount in assets (and no ability to generate ongoing revenue). It was plainly insolvent." (Adv. D.I. 153, ¶ 158.)

The allegations relating to the Debtor's purported insolvency do not distinguish among the various transfers. To the extent that the SAC alleges that the initial transfer rendered the Debtor insolvent, such an allegation is contradicted by other facts in the SAC and the documents that GLAS has presented to the Court as evidence. They show that, as of the completion of the initial transfer in July 2022, the Debtor retained possession of at least $533 million. Therefore, it is implausible to allege that the initial transfer rendered the Debtor insolvent. The allegation that the

\\4158-3787-5792 v1

Debtor, during the period of the initial transfer (*i.e.*, from April 2022 through March 2023), missed loan payments does not establish insolvency. At most, it is an allegation that the Debtor breached the terms of the Credit Agreement.

*Sixth Badge*

"The Debtor made the transfers shortly after incurring substantial debt. The Debtor began making the fraudulent Camshaft transfers within six months of entering into the Credit Agreement, on the heels of defaulting multiple times and entering into a temporary waiver agreement." (*Id.*)

Once again, the Debtor's investment of the Alpha Funds through the initial transfer was completely in accordance with its purpose and the terms of the Credit Agreement. During the initial transfer period (April 2022 through March 2023), those funds remained in the Debtor's possession and in the United States, which were the sole concerns of the Lenders. (*See* Mot., 10.)

\* \* \* \* \*

In sum, the SAC does not contain plausible allegations regarding any of the six "badges of fraud" cited by Plaintiffs. Therefore, Plaintiffs cannot rely on allegations of circumstantial evidence to support its claim against the Camshaft Defendants for actual fraudulent transfer.

**B.  The Camshaft Fund Was a "Mere Conduit" and Is Not an Initial Transferee for Purposes of a Fraudulent Transfer Claim**

Plaintiffs argue that the Court should not reach the "mere conduit" issue in deciding the Motion because it relates to an affirmative defense and such defenses may not be considered on a motion to dismiss. (Opp'n, 17.) Plaintiffs have overstated the applicable law. The Third Circuit has held that a court may dismiss a claim based on an affirmative defense when that defense is clear from the face of the complaint. *See*, *e.g.*, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). That is exactly the situation here.

The parties agree that the relevant test for the "mere conduit" issue is whether the transferee lacked "dominion and control" over the funds such that "it had no power to redirect the funds to

\\4158-3787-5792  v1

its own use." (*See* Opp'n, 17-18 (quoting *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 103 (Bankr. D. Del. 2006).) Plaintiffs cite to the allegations in Paragraphs 72 and 73 of the SAC as support for the notion that the Camshaft Fund had "dominion and control" over the Alpha Funds. (Opp'n, 18, ¶ 37.) Those allegations, however, are facially deficient. The SAC merely alleges that the decision-making with respect to the investment of the Alpha Funds rested with the Camshaft Fund. The SAC does not allege, nor could it, that the Camshaft Fund could redirect the Alpha Funds for its own use. In other words, the Camshaft Fund could not have used the Alpha Funds to pay its debts or obligations, just like a bank cannot empty a customer's account to pay the bank's bills.[4] The Debtor retained control over the funds, which is why it listed the Alpha Funds as "Cash and Bank" on its financial reports in 2022. Indeed, Plaintiffs repeated references to those financial reports in the SAC (*see*, *e.g.*, Adv. D.I. 153, ¶¶ 9, 47, 95, 101, 110 and 130) show that, on the face of the pleading, the Camshaft Defendants have a dispositive "mere conduit" defense.

C.  **Camshaft Advisors and Camshaft Management Were Not Initial Transferees**

Plaintiffs claim that Camshaft Advisors and Camshaft Management are proper defendants under Counts I and II because of their relationship to the Camshaft Fund. (*See* Opp'n, 19-20.) It is telling, however, that Plaintiffs do not cite to single case where the non-recipient of a transfer was held liable for a fraudulent transfer.

Instead, the inclusion of "All Defendants" under the words "Count I" and "Count II" must be a scrivener's error. Every allegation in Count I regarding the initial transfer states that it was to "Camshaft Fund." (*See*, *e.g.*, Adv. D.I. 153, ¶¶ 156, 158.) Even more importantly, the SAC alleges that "Camshaft Fund is liable as the initial recipient of the Alpha Funds transferred by the

---

[4]     Plaintiffs make much of the standard language used by the Camshaft Fund stating that investors should be prepared to lose their investment. (*See* Opp'n, 18-19.) This statement refers to the fact that the Alpha Funds could have been diminished by investment losses (which they were not); it does not mean that the Camshaft Fund had the Debtor's permission to use the Alpha Funds for the Camshaft Fund's obligations.

8

Debtor." (*Id.*, ¶ 160; emphasis added.) It does not allege in Count I that Camshaft Advisors or Camshaft Management is similarly liable. Moreover, the relief section of Count I states that "the Debtor should recover from <u>Camshaft Fund</u>, Ravindran, T&L, and Inspilearn, pursuant to Section 550 of the Bankruptcy Code, the full amount of such transfers." (*Id.*, ¶ 164; emphasis added.) Again, there is no reference to Camshaft Advisors or Camshaft Management. Therefore, there are no allegations in Count I of the SAC that the Camshaft Advisors or Camshaft Management are initial transferees for the purposes of an actual fraudulent transfer claim.

The same is true for the constructive fraudulent transfer claim in Count II of the SAC. The SAC alleges that the initial transfer was to "Camshaft Fund," that "Camshaft Fund" is liable as an initial transferee of the Alpha Funds, and that the Debtor should recover from "Camshaft Fund." (*See id.*, ¶¶ 166, 168, 172 and 176.) There are no specific references to Camshaft Advisors or Camshaft Management anywhere in Count II.[5]

Accordingly, the Court should (at a minimum) dismiss the claims in Counts I and II to the extent they are alleged against Camshaft Advisors and Camshaft Management.

II. **The Claims for Constructive Fraudulent Transfers Are Deficient Because Plaintiffs Cannot Show That the Debtor Failed to Receive REV**

A. The Allegations in Count II Are Insufficient as a Matter of Law

Plaintiffs focus on the two-part test for REV, noting that the Third Circuit has directed courts to determine (1) if there was some value accruing to the debtor; and (2) if so, whether the debtor got roughly the value it gave. (Opp'n, 21.) Here, there can be no doubt that the first prong is satisfied under Third Circuit precedent, which states that "so long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we

---

[5]   Paragraph 17 of the SAC drives the point home. The Debtor states that "[a]mong other reliefs [*sic*], the Debtor seeks to avoid the actual and constructive fraudulent transfers of the Alpha Funds to Defendants <u>Camshaft Fund</u>, Inspilearn, and T&L." (*Id.*, ¶ 17; emphasis added.)

9

will find that value has been conferred." *In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996). The question, therefore, is whether the allegations in the SAC are sufficient on the issue of whether, as a result of the first transfer, the Debtor received roughly the value it gave.[6]

Plaintiffs argue that the SAC sufficiently alleges that the Debtor did not receive roughly the value it gave when it transferred the Alpha Funds to the Camshaft Fund in 2022. The sole allegations on this issue are in Paragraph 168, where the SAC alleges that the investment of the Alpha Funds with the Camshaft Fund did not "generate investment returns while minimizing risk of loss." (Adv. D.I. 153, ¶ 168.) That allegation is implausible and should be disregarded by the Court because it is directly contradicted by the undisputed evidence—in the form of interrogatory responses and supporting documentation—that the investment generated a positive return. (*See* Mot., 16; Adv. D.I. 28-4.)

Plaintiffs contend that the Court should not take the evidence from the publicly filed interrogatories into account on a motion to dismiss. (Opp'n, 23.) The courts, however, have considered interrogatory responses when the facts contained in them are undisputed. *See*, *e.g.*, *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 874 n.1 (N.D. Cal. 2020); *Carson v. Experian Info. Solutions, Inc.*, 2019 WL 3073993, at *2 (C.D. Cal. July 9, 2019). Plaintiffs claim that the interrogatory responses are "self-serving, deficient, and materially inaccurate," but they offer no support for this assertion other than a cross-reference to a similar, unsupported statement earlier in the Opposition. (*See* Opp'n, 23, ¶ 47; *id.*, 3, ¶ 5.) In stark contrast, the Camshaft Defendants' interrogatory responses regarding the appreciation of the investment are backed up by statements

---

[6] Plaintiffs contend that the issue of equivalent value is inherently factual and cannot be decided on a motion to dismiss. (*See* Opp'n, 22-23.) That general rule has no application where, as here, the facts are not in dispute. In the Motion, the Camshaft Defendants cited two cases where the courts decided the REV issue as a matter of law on a motion to dismiss—*In re F-Squared Inv. Mgmt., LLC*, 600 B.R. 294, 309 (Bankr. D. Del. 2019) and *Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375, 390 (E.D. Pa. 2013)—but Plaintiffs ignored both cases in the Opposition.

from Apex. Moreover, the SAC was not drafted on a blank slate. It was filed two months after the Camshaft Defendants provided their interrogatory responses and the supporting documentation, so those facts were known to Plaintiffs when the SAC was filed. Plaintiffs cannot seek to override undisputed facts that do not fit their narrative simply by pleading to the contrary.

Plaintiffs' final two arguments on REV are easily rebutted. *First*, Plaintiffs assert that REV here cannot be assessed by looking at whether the value of the Alpha Funds appreciated. (Opp'n, 23.) But the asserted lack of REV is premised on an allegation in the SAC that the investment did not generate a return. (Adv. D.I. 153, ¶ 158.) Thus, it is entirely appropriate for the court to consider the appreciation in value.[7] *Second*, Plaintiffs contend that the Debtor did not receive REV because it later transferred the appreciated investment to Inspilearn in March 2023. (Opp'n, 23.) The Debtor, however, was formed to generate investment income for, and transfer funds to, other BYJU's companies (like Inspilearn). The initial transfer, therefore, brought substantial value to the Debtor because it allowed the Debtor to fulfill its function within the BYJU's group.

### B.   The Allegations in Count III Are Insufficient as a Matter of Law

Plaintiffs contend that they should be held to a lower standard of pleading for the constructive transfer claim against Camshaft Advisors and Camshaft Management because (a) information regarding the fees paid are solely within the knowledge of the Camshaft Defendants; and (b) the Camshaft Defendants allegedly have refused to produce information and documents on the fees in response to discovery requests. (Opp'n, 25.) Plaintiffs, however, did not seek discovery on the fees in the first set of requests served by the Debtor, even though nothing prevented them from doing so. (*See* Adv. D.I. 28-2, 28-3.) Therefore, it is utterly false that Plaintiffs' pleading deficiency is attributable to the acts or omissions of the Camshaft Defendants.

---

[7]   Plaintiffs' sole authority, *In re TSIC, Inc.*, 428 B.R. 103 (Bankr. D. Del. 2010), is also distinguishable because it did not involve the value of an investment.

Because Plaintiffs had an opportunity to take discovery on this issue to plead their claim properly and failed to do so, the Court should dismiss Count III.

### III. The Exculpation and Indemnification Provisions in the Second Amended & Restated LPA Preclude the Constructive Fraudulent Transfer Claims

Plaintiffs assert that the Camshaft Defendants cannot rely on the exculpation and indemnification provisions they cite because (1) the Court cannot take judicial notice of those provisions; (2) Plaintiffs are not bound by them; and (3) the provisions do not apply to actions involving bad faith or intentional misconduct. (*See* Opp'n, 26-27.) Each argument fails.

*First*, the Court can (and should) consider the Second Amended & Restated LPA in connection with the Motion because it is integral to the allegation that the Debtor acquired limited partnership interests in the Camshaft Fund in 2022. *See Strobel v. Rusch*, 431 F. Supp. 2d 1315, 1324 (D.N.M. 2020) (taking judicial notice of partnership agreement on a motion to dismiss where, as here, there is no doubt as to its authenticity).

*Second*, Plaintiffs argue that the exculpation and indemnification provisions do not apply to fraudulent transfer claims because debtors bring such claims on behalf of creditors and, as a general matter, creditors are not bound by pre-petition agreements to which they were not parties. (Opp'n, 26.) However, the cases cited by Plaintiffs on this point are distinguishable because, in this case, the Lenders (*i.e.*, the creditors on whose behalf the Debtor is bringing the fraudulent transfer claims) took control of the Debtor pre-petition and assumed all of its rights and liabilities. (*See* Adv. D.I. 153, ¶ 103.) Moreover, GLAS (on behalf of the Lenders) brought the very same claims for fraudulent transfer in the Florida action that are in this case. Under the circumstances, Plaintiffs cannot argue that the creditors were strangers to the Debtor's pre-petition transactions.

*Third*, Plaintiffs' argument regarding the inapplicability of the exculpation and indemnification provisions is beside the point. The Camshaft Defendants are contending that those

\\4158-3787-5792  v1

provisions bar the <u>constructive</u> fraudulent transfer claims, which, in contrast to the actual fraudulent transfer claim, have no scienter element. (*See* Mot., 17.) Thus, the exculpation and indemnification provisions apply to the claims in the SAC that do not involve allegations of bad faith or intentional misconduct.

Accordingly, the Court should hold that the constructive fraudulent transfer claims are barred, as a matter of law, by the exculpation and indemnification provisions.

## IV. **The Declaratory Judgment Claim Improperly Includes the Camshaft Defendants (Count VIII)**

Plaintiffs attempt to rescue the defective declaratory judgment claim in Count VIII, as against the Camshaft Defendants, goes nowhere.

Plaintiffs assert that there is a need to adjudicate the adverse legal interests of Plaintiffs and the Camshaft Defendants, as required by 28 U.S.C. § 2202, because the Camshaft Defendants purportedly "have a legal right or interest in the disposition" of the "Camshaft LP Interests." (Opp'n, 28, ¶ 58.) Plaintiffs define the term "Camshaft LP Interests" as the Debtor's transfer of the Alpha Funds to the Camshaft Fund in exchange for limited partnership interests. (*Id.*, 1, ¶ 3.) Thus, "Camshaft LP Interests" refers to the two transfers in 2022, which are collectively the initial transfer. Count VIII, however, relates solely to the <u>second</u> transfer in March 2023 and subsequent transfers. (*See* Adv. D.I. 153, ¶ 229 (alleging that "the Debtor requests a declaratory judgment … that (i) the Second Fraudulent Transfer—and any subsequent transfer or disposition of the Alpha Funds—were *ultra vires*, void *ab initio*, and/or otherwise without force and effect").) The SAC seeks a declaration that, because the second transfer was void, "the Debtor continues to maintain a legal and equitable right in the Alpha Funds." (*Id.*, ¶ 228.)

Therefore, if Plaintiffs are right and the second transfer is voided, the Alpha Funds (or the limited partnership interest that was transferred) would revert to the Debtor. The Camshaft

13

\\4158-3787-5792 v1

Defendants have no claim to the Alpha Funds (or the limited partnership interest) because they were either transferred properly to Inspilearn or revert to the Debtor. The Camshaft Defendants have not claimed, and the SAC does not allege, that they have a right to claim the Alpha Funds or the limited partnership interest that was transferred in March 2023. Again, the Debtor engaged in blunderbuss pleading by wrongfully including the Camshaft Defendants in Count VIII.

### V. Plaintiff Has Not Adequately Alleged a Willful Violation of the Automatic Stay (Count XI)

Plaintiffs argue that the SAC may allege a violation of the automatic stay on "information and belief" because the relevant facts are solely within the possession of the Camshaft Defendants. (Opp'n, 29.) They also allege that this rule should particularly apply here because the Camshaft Defendants have "thwarted Plaintiffs' ability to obtain discovery." (*Id.*, 29-30.)

What Plaintiffs fail to mention, however, is that they did not seek discovery on the stay issue prior to filing the SAC in late April 2024. In their responses to the Debtor's first set of interrogatories, the Camshaft Defendants stated that the third transfer was on February 1, 2024, but Plaintiffs did not serve follow-up discovery on the more precise timing until April 24, 2024, which is well <u>after</u> they moved for leave to file the SAC. Nothing prevented Plaintiffs from serving such discovery prior to April 24, 2024. The proper approach would have been for Plaintiffs to obtain the discovery relating to the stay and then determine whether they have a viable claim.[8]

Had Plaintiffs served discovery regarding the automatic stay before asserting the claim in Count XI against the Camshaft Defendants, they would have learned that the third transfer pre-dated the Petition filing. Because Plaintiffs chose not to avail themselves of discovery, they cannot

---

[8] Plaintiffs cannot argue that discovery on the stay issue would have been futile. The Camshaft Defendants provided information on the date of the third transfer. And they have amended their responses to the first set of interrogatories to make it clear that the transfer was prior to the bankruptcy filing. (*See* Van Tol Reply Decl., **Exhibit 1**.) For clarity, the Camshaft Defendants are not basing their request to dismiss the claims in Count XI on those amended responses and they are not asking the Court to take judicial notice of them.

14

plead a stay violation on "information and belief" and the Court should dismiss the claim against the Camshaft Defendants in Count XI of the SAC.

## CONCLUSION

For the foregoing reasons and those stated in the Motion, the Court should enter an Order granting the Motion and dismissing the SAC with prejudice.

Dated: May 29, 2024
       Wilmington, DE

| | |
|---|---|
| HOGAN LOVELLS US LLP | SAUL EWING LLP |
| Pieter Van Tol (admitted *pro hac vice*) | |
| Christopher R. Bryant (admitted *pro hac vice*) | */s/ Evan T. Miller* |
| Elizabeth Carter (admitted *pro hac vice*) | Evan T. Miller (No. 5364) |
| 390 Madison Avenue | 1201 N. Market Street |
| New York, NY 10017 | Suite 2300 |
| Tel: (212) 918-3000 | P.O. Box 1266 |
| Email: pieter.vantol@hoganlovells.com | Wilmington, DE 19899 |
|       chris.bryant@hoganlovells.com | Tel: (302) 421-6864 |
|       elizabeth.carter@hoganlovells.com | Email: evan.miller@saul.com |
| and | and |
| HOGAN LOVELLS US LLP | SAUL EWING LLP |
| David Massey (*admitted pro hac vice*) | Turner N. Falk (admitted *pro hac vice*) |
| 600 Brickell Avenue | Centre Square West |
| Suite 2700 | 1500 Market Street, 38th Floor |
| Miami, FL 33131 | Philadelphia, PA 19102-2186 |
| Tel: (305) 459-6500 | Tel: (215) 972-7777 |
| Email: david.massey@hoganlovells.com | Email: turner.falk@saul.com |

*Counsel for Camshaft Defendants*

\\4158-3787-5792 v1