<pre>
 1                   UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE
 2

 3  IN RE:                         .  Chapter 11
                                   .  Case No. 24-10140 (JTD)
 4  BYJU'S ALPHA, INC.,            .
                                   .
 5          Debtor.                .
                                   .
 6  . . . . . . . . . . . . . . .  .
                                   .
 7  BYJU'S ALPHA, INC.,            .  Adversary Case
                                   .  No. 24-50013 (JTD)
 8          Plaintiff,             .
                                   .
 9      v.                         .
                                   .
10  CAMSHAFT CAPITAL FUND, LP,     .
    CAMSHAFT CAPITAL ADVISORS,     .
11  LLC, CAMSHAFT CAPITAL          .
    MANAGEMENT, LLC, RIJU          .
12  RAVINDRAN, INSPILEARN LLC,     .
    and THINK AND LEARN PRIVATE    .  Courtroom No. 5
13  LIMITED,                       .  824 Market Street
                                   .  Wilmington, Delaware 19801
14          Defendants.            .
                                   .  Tuesday, August 20, 2024
15  . . . . . . . . . . . . . . .  .  1:00 p.m.

16

17                     TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE JOHN T. DORSEY
18                UNITED STATES BANKRUPTCY JUDGE

19

20  Audio Operator:          Jermaine Cooper, ECRO

21  Transcription Company:   Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.
</pre>

```
 1   APPEARANCES:

 2   For the Debtor/
     Plaintiff:                Robert S. Brady, Esquire
 3                             Kenneth J. Enos, Esquire
                               YOUNG CONAWAY STARGATT & TAYLOR, LLP
 4                             Rodney Square
                               1000 North King Street
 5                             Wilmington, Delaware 19801

 6                             -and-

 7                             Benjamin I. Finestone, Esquire
                               QUINN EMANUEL URQUHART
 8                                & SULLIVAN, LLP
                               51 Madison Avenue
 9                             22nd Floor
                               New York, New York 10010
10
     For GLAS Trust
11   Company, LLC:             Ravi S. Shankar, Esquire
                               KIRKLAND & ELLIS, LLP
12                             333 West Wolf Point Plaza
                               Chicago, Illinois 60654
13
     For the Camshaft
14   Parties:                  Evan T. Miller, Esquire
                               SAUL EWING, LLP
15                             1201 North Market Street
                               Suite 2300
16                             Wilmington, Delaware 19899

17                             -and-

18                             Pieter Van Tol, Esquire
                               HOGAN LOVELLS US, LLP
19                             390 Madison Avenue
                               New York, New York 10017
20
     For Think & Learn,
21   Tangible Play, Inc.,
     and Riju Ravindran:       Joseph B. Cicero, Esquire
22                             CHIPMAN BROWN CICERO & COLE, LLP
                               Hercules Plaza
23                             1313 North Market Street
                               Suite 5400
24                             Wilmington, Delaware 19801

25
```

APPEARANCES (CONTINUED):

For Think & Learn,
Tangible Play, Inc.,
and Riju Ravindran:          Sheron Korpus, Esquire
                             KASOWITZ BENSON TORRES, LLP
                             1633 Broadway
                             New York, New York 10019

ALSO APPEARING:

For the Camshaft
Parties:                     William C. Morton, Principal
                             CAMSHAFT CAPITAL MANAGEMENT

1                            INDEX

2   MOTIONS:                                                    PAGE

3   Agenda
    Item 2:    Motion of Hogan Lovells US LLP for Leave to        5
4              Withdraw as Counsel to Camshaft Capital Fund,
               LP, Camshaft Capital Advisors, LLC, Camshaft
5              Capital Management, LLC, and William Morton
               [D.I. 228, A.D.I. 285; 7/16/24]
6
               Court's Ruling:                                   19
7
    Agenda
8   Item 3:    Motion of Saul Ewing LLP for Leave to Withdraw    20
               as Counsel to Camshaft Capital Fund, LP,
9              Camshaft Capital Advisors, LLC, Camshaft
               Capital Management, LLC, and William Morton
10             [D.I. 229, A.D.I. 286; 7/16/24]

11             Court's Ruling:                                   20

12  Agenda
    Item 4:    Motion to Withdraw as Counsel for Riju            21
13             Ravindran, Tangible Play, Inc., Epic!
               Creations, Inc., and Neuron Fuel, Inc. filed
14             by Chipman Brown Cicero & Cole, LLP and
               Kasowitz Benson Torres LLP [D.I. 233, 7/19/24]
15
               Court's Ruling:                                   25
16
    Agenda
17  Item 5:    Motion to Withdraw as Counsel for Defendants      21
               Riju Ravindran and Think & Learn Private, Ltd.
18             filed by Chipman Brown Cicero & Cole, LLP and
               Kasowitz Benson Torres LLP
19             [A.D.I. 288; 7/17/24]

20             Court's Ruling:                                   25

21

22  Transcriptionist's Certificate                              27

23

24

25

1   (Proceedings commenced at 1:00 p.m.)

2     THE CLERK:  All rise.

3     THE COURT:  Thank you, everyone.  Please be

4 seated.

5     Mr. Enos?

6     MR. ENOS:  Good afternoon, Your Honor.  Ken Enos,

7 Young Conaway Stargatt & Taylor, on behalf of the Debtor.

8     Your Honor, it's good to appear before you again

9 today, but the debtors don't have any motions, so I will cede

10 the podium -- I believe the Camshaft motions are up first --

11 to Mr. Van Tol.

12     THE COURT:  Mr. Van Tol?

13     MR. VAN TOL:  Good afternoon, Your Honor.  Pieter

14 Van Tol from Hogan Lovells for the Camshaft Defendants.  I'm

15 joined by local counsel, Mr. Miller from Saul Ewing, and,

16 also, I'll note that Mr. Morton is present in the courtroom

17 today.

18     Thank you, Your Honor, for hearing this motion

19 today.  I don't have a lot to add.  It's in our papers that

20 we have at least one, possibly two grounds for withdrawal

21 under the Rules of Professional Conduct, which is, first,

22 Camshaft has not been fulfilling its obligations to us under

23 our engagement agreement and, secondly, it would impose a

24 financial burden on my firm to continue under the

25 circumstances.

1          I am a bit circumscribed about what I can say by

2    virtue of the ethical rules, but, of course, if Your Honor

3    has questions, I'll answer them as best I can and we will be

4    happy to submit, *in camera*, submissions for Your Honor, if

5    you'd like.

6          Going to the objections, there aren't any, Your

7    Honor.  The Debtor has no objected.  Camshaft does not

8    either.

9          GLAS -- excuse me -- GLAS filed a response saying

10   that this motion should not be used for the purpose of delay.

11   That's not our purpose at all.  We actually held off on

12   filing the motion until we could complete discovery and

13   Mr. Morton's deposition.  We have put in an opposition to the

14   summary judgment motion.  There's nothing outstanding from

15   our point of view and this is not done for the purpose of

16   delay.

17          We have fulfilled all our obligations, Your Honor,

18   and with that, we would request that the Court grant the

19   motion, but, of course, I'm happy to answer any questions

20   that you may have.

21          THE COURT:  Where does the summary judgment motion

22   stand?

23          MR. VAN TOL:  Right now, the posture is, Your

24   Honor, the Plaintiffs moved for summary judgment.  We filed

25   an opposition on July 29th; "we" being Camshaft.  There was a

1  reply filed by the Plaintiffs on, I believe, August 12th.

2  The last piece of paper is the other Defendants need to put

3  in their -- I'm sorry -- the last piece of paper is there was

4  a reply due on August 30th by the Plaintiffs.

5           THE COURT:  So the briefing is not completed?

6           MR. VAN TOL:  Briefing is not completed.

7           It is, as far as the Camshaft Defendants are

8  concerned, but not as to the other Defendants.

9           THE COURT:  All right.  Has Mr. Morton and

10  Camshaft been trying to retain new counsel?

11          MR. VAN TOL:  To my knowledge, he has not yet

12  retained counsel.  I've been involved in some discussions

13  with potential new counsel, but nothing's come to fruition.

14  Your Honor, I believe the discussions continue to this day.

15          THE COURT:  Okay.  Mr. Morton, have you reached

16  out to other counsel?

17          MR. MORTON:  Yes, Your Honor, I have.  In fact, I

18  have reached out to almost 20 different counsels over the

19  last few months and I have a binder here for you that is

20  Bates stamped with the pertinent information to support that,

21  that I was not able to file because Hogan and us had a

22  dispute on their obligation to assist us in filings, that

23  they were required to do it before their pending motion for a

24  withdrawal was heard or not.

25          And I'd appreciate the opportunity to show you the

1   contents of this file and I also have an argument prepared if

2   I'm able to present, Your Honor.

3           THE COURT:  Go ahead.  Come up to the podium.

4           Any objection to him showing me what he's got in

5   his binder?

6           MR. ENOS:  No, Your Honor.

7           MR. MORTON:  Your Honor, may I -- I'm not a

8   lawyer, so forgive me if I don't understand all of the

9   processes here -- may I present to you some of the contents

10  that I'll be describing?

11          THE COURT:  You're going to have to speak up or

12  move the microphones closer to you, as well.  I'm having a

13  hard time hearing you.

14          MR. MORTON:  Is this better?

15          THE COURT:  That's better.

16          Just hand them all to him.  Take your sticky.

17          Okay.  Whenever you're ready?

18          MR. MORTON:  Your Honor, if you look at Bates

19  stamp 3 on the first document --

20          THE COURT:  Go ahead.

21          MR. MORTON:  -- you'll see an exchange between us

22  and the Hogan Lovells general counsel on our request for

23  their assistance on filing our objection motion and that

24  continues through Bates stamp 1.  And I'd like to point out

25  to the Court that despite the fact that counsel assisted us

1  on filing our extension papers, the same counsel took the

2  position that they're not required to help us on our

3  objection papers.

4       And their assistance on drafting filing our

5  extensions are Bates stamped documents 4 through 6, Your

6  Honor.  And whether you feel it's appropriate to deny the

7  motions based on the concept that counsel intentionally

8  hindered our efforts to object to their motion, despite

9  putting in their same withdrawal motion that they would

10  perform all required filings necessary, I would like to

11  proceed to the rest of my argument, Your Honor.

12       THE COURT:  What's your basis for your objection

13  of their withdrawal?

14       MR. MORTON:  The basis is that it is unfair to the

15  client.  It is unfair to the Plaintiffs.  And most

16  importantly, Your Honor, it puts the Court in a horrible

17  disposition and I can explain more.

18       THE COURT:  Go ahead.

19       MR. MORTON:  This is a very awkward position for

20  me to be in because over the last few months, I built a real

21  camaraderie with Pieter and Evan and the rest of the team and

22  I understand the pressure that they face at their firm for

23  working with a client whose bills are not being paid and I

24  empathize with the situation.  And it pains me to do this,

25  and that's why I'm so focused on piecing together my

1  business, Your Honor, to one day make them whole, as I've

2  told them, regardless of the fact, Your Honor, that I'm fully

3  indemnified for my fees from BYJU's.

4       And if you look at Bates stamped document 14

5  through 15, that's an example of our request for BYJU's to

6  cover our fees.  And if you look at 7 through 13, it will

7  show that the counsels here have known what they've gotten

8  into since the very beginning of this case.  Everyone knew

9  that BYJU's was responsible for the entirety of our legal

10  fees.  And it was no shock that in the very beginning of our

11  matter here, but by February, that BYJU's was in trouble;

12  however, spite the fact, they took on the matter.

13       And even though BYJU's stopped paying, they

14  continued their work.  Now, we're in a position where we're

15  very late-stage in a very complex case, where it has been

16  impossible to retain new counsel and it's mainly due to the

17  fact that our indemnifying party has been in insolvency and

18  recently came out of.  And our capital position, if you look

19  at documents 22 through 25, are all of our company bank

20  accounts and my accounts, personally, show a balance of less

21  than $3,000.

22       The items in discussion at my deposition recently

23  with Mr. Finestone have been sold or pledged to creditors and

24  we are not in any position to retain new counsel and despite

25  this, we have been very aggressive with pursuing new counsel.

1  And the rest of this folder, Your Honor, is three months of

2  communications with new counsel that include a variety

3  amounts of acts, including (indiscernible) reaching out to

4  people who have commented on articles about this case, who

5  recommend that lawyers would take this up just for the merits

6  of the case; however, we have not been able to find those

7  lawyers.

8           We have had several discussions --

9           THE COURT:  If you find them let me know.  I don't

10  know any lawyer who works for me.

11          MR. MORTON:  Pardon?

12          THE COURT:  I wouldn't -- I don't think anybody

13  would take this case for free.

14          MR. MORTON:  And it appears that is the case, and

15  I really wish we were in a different position, Your Honor,

16  but we're not.  And I want you to know that instead of trying

17  to take advantage of the situation, I've been very adamant

18  about retaining new counsel.  You can ask them directly how

19  many conversations we've had with respect to counsels.

20          Evan has done a phenomenal job of procuring

21  possible replacements, so has Pieter, and despite all this,

22  nothing has stuck.  And under oath today, if we do not have

23  counsel moving forward, I have no idea how we're going to be

24  able to secure new counsel.

25          Further, Your Honor, getting to the merits of

1   this, we strongly, and it's been discussed by the Plaintiffs,

2   that discovery remains ongoing.  And if you look to document

3   82 through 83, and 84 through 87, it's the last of the ones I

4   gave you, those are communications between the Plaintiffs and

5   us.  And you will note that they state that we are at an

6   impasse on discovery and, further, that they intend to raise

7   discovery issues to this Court, which is on documents 84

8   through 87.

9          And I'm not sure if Mr. Finestone is intending to

10  raise those discovery issues and future requests at this

11  time.  I think there's a very strong chance that, smartly,

12  he's not doing so, because he knows that if he does, you're

13  less likely to deny these motions.

14         THE COURT:  I think he's not doing so because it's

15  not on the agenda for today.  I have no motions pending in

16  front of me.

17         MR. MORTON:  That may be, very much.

18         So, but it shows that discovery is still ongoing

19  and if there's no counsel, the basis for producing counsel is

20  severely impaired, especially with the fact that we discussed

21  where there's no availability to have replacement counsel.

22  How are we going to get them their documents that they need?

23         And given that principals of this case have been

24  in contempt for discovery and mainly spend time overseas, I

25  think the Court should take note to the concern of discovery

1  to continue.  In fact, I'm not aware if you heard the

2  transcript from the last hearing on this matter, but Judge

3  Shannon specifically pointed out his concern for discovery to

4  continue, given all the circumstances, and if we are not to

5  have counsel moving forward, Your Honor, I presume you would

6  give us some time to find replacement counsel and that timing

7  is going to cause a delay.  And we're talking about over a

8  half a billion dollars claim to be fraudulently transferred

9  by Plaintiffs here; that requires a deep sense of urgency and

10 a delay is not fitting.

11         Secondly, it puts the client in an adverse

12 position, Your Honor, because as we speak right now, we're in

13 the middle of completing our briefing for the partial summary

14 judgment.  We have a surreply that we are working on that is

15 not finalized and we have an impending oral argument for

16 partial summary judgment.  I presume that you're going to

17 grant that, that is going to occur.  The motion to dismiss,

18 presuming there's an oral argument, has not been heard, and

19 we have an ongoing discovery request to GLAS, BYJU's Alpha,

20 and deposition notices to Tim Pohl, Mr. Gallo, and

21 Mr. Spencer.  Those are approximately seven to eight matters

22 occurring right now and without counsel to finish or complete

23 these items, it adversely puts us in a position.

24         Lastly, and most importantly, Your Honor, without

25 counsel moving forward, it puts the Court and yourself in a

1   disposition.  And my understanding, just limited law, Your

2   Honor, that if we do not have counsel and there are matters,

3   which there will be, relating to technicalities on briefings,

4   filings, and jurisdictional issues, it is your responsibility

5   to assist on those different things.  And my question is, if

6   we're not beginning to have counsel moving forward here, Your

7   Honor, are you prepared to do so?

8        And on that note, I appreciate you hearing me out,

9   Your Honor.  Thank you very much.

10       THE COURT:  Okay.  Mr. Van Tol, any response?

11       MR. VAN TOL:  Thank you, Your Honor.

12       Just one point, Your Honor, which is the fact that

13  there's a conflict between my firm and the client should be

14  evident by the fact that Mr. Morton is here arguing against

15  the motion and with the emails he presented to you.

16       I'm not aware of any obligation that counsel has

17  to oppose its own motion to withdraw, which is why we did

18  not.  It also seems that Mr. Morton has opened the door to

19  talk about fees; with that, I think I'm at liberty to say we

20  are owed several million dollars in fees and that is one of

21  the prongs for allowing counsel to withdraw, which is we do

22  not have to endure financial hardship.

23       So, I have nothing further for the Court on our

24  motion.  I would ask that you grant it.

25       THE COURT:  Anybody else want to be heard?

1          MR. FINESTONE:  Thank you, Your Honor.  Ben

2   Finestone, Quinn Emanuel, on behalf of the Debtor.

3          As counsel accurately noted, the Debtor didn't

4   file an opposition, Your Honor, and I think as a technical

5   matter, the Debtor takes no position on the pending motion to

6   withdraw.  The only comment that I would make, and I also

7   wanted to just rise to be able to answer any question that

8   the Court may have for me, but the only comment -- I have two

9   comments to make.  One, we might have been in a different

10  world, a world that, ironically, could have sounded a little

11  bit like Mr. Morton's presentation in opposing this motion,

12  if not for one procedural fact.  And it's the procedural fact

13  that Your Honor's initial question went to when Your Honor

14  took the bench, that summary judgment is substantially

15  completed.

16         And just to be clear on that, Your Honor, *vis-a-*

17  *vis*, Camshaft, the summary judgment briefing is complete.

18  The Debtor has filed a reply, *vis-a-vis*, the table behind

19  Camshaft, Think & Learn, Tangible Play, and Mr. Ravindran, an

20  opposition has been filed and the Debtor is just working on

21  filing a reply.

22         So nothing more is needed from that side of the

23  room for the entirety of the summary judgment to be completed

24  from a briefing perspective.  It was one motion, Your Honor,

25  but the oppositions branched out into two different paths and

1  that's why it's on a different timeline.

2          So, because the summary judgment briefing is

3  substantially complete, that was probably the biggest piece

4  of our analysis why we determined that we wouldn't be

5  prejudiced if counsel were to be released, because counsel

6  already did its best for the client here, Your Honor.

7          The other comment that I just wanted to make,

8  because I would be remiss if I just let it go without --

9  because it was made on the record by Mr. Morton.  It's very

10 alarming to the Debtor that Mr. Morton has sold assets.  He

11 said he sold some assets and he did other things and he

12 referenced assets that were identified in the deposition.

13         At the deposition, Your Honor, we had uncovered

14 that a several-hundred-thousand-dollar watch -- please don't

15 hold me to whether it's 200,000 or 300,000 -- something

16 that -- an obscene price for a watch was purchased and

17 Mr. Morton's memory was he purchased that watch either in

18 March or April.  The PI order, of course, was entered

19 March 14th, so it sounded to me like that's highly unlikely

20 to be a violation of the PI order and then today we found out

21 that that watch, the fruits of the putative violation, have

22 been sold.  I don't know what happened to the proceeds.

23         But from our perspective, as asserting the

24 contingent and disputed claim against that lowercase d,

25 debtor, sounds like another fraudulent transfer and I just

1  wanted to at least voice our reaction to that disclosure that

2  was made in court today, Your Honor.

3          So the Debtor doesn't take any position.  It's

4  grounded on the fact that the summary judgment briefing is

5  complete.  The Debtor does prefer -- the Debtor doesn't

6  always get what it wants -- but the Debtor prefers in this

7  case, a merits-based ruling, as opposed to a default ruling

8  and that's because we think the merits-based ruling -- the

9  parties here are going to argue that whatever judgment comes

10 out of this court, they're going to try to discount that

11 judgment however they can and that's why we prefer a merits-

12 based ruling.

13          We believe we're in a position to get one from the

14 Court, but we're not counting our chickens; it's just that

15 it's fully briefed.

16          Any questions?

17          THE COURT:  The motion is for partial summary

18 judgment, correct?

19          MR. FINESTONE:  Only on certain counts; that's

20 right, Your Honor.

21          THE COURT:  So there's still going to be something

22 left, no matter how we decide the summary judgment motion?

23          MR. FINESTONE:  It's probably true; yes, Your

24 Honor.

25          THE COURT:  All right.  Thank you.

1          MR. FINESTONE:  Okay.

2          MR. SHANKAR:  Your Honor, Ravi Shankar from

3  Kirkland & Ellis on behalf of GLAS Trust Company.

4          Your Honor, this case has been unique, quite

5  unique in many respects, but also unique because, from my

6  point of view as the principal stakeholder of this Debtor,

7  the litigation here is less about the merits and more about

8  time.  And I raised that, and we put that in our papers at

9  Docket 306, which are the papers Mr. Van Tol referenced.

10  Because whether withdrawal is granted or not granted, GLAS

11  does not take a position on that matter, but we are concerned

12  about potential knock-on effects.

13          And what I mean by that, Your Honor, is you heard

14  from Mr. Morton the desire for delay for a period of time to

15  get replacement counsel.  Your Honor, the consequences of

16  withdrawal should not be more delay.  We've seen plenty of

17  delay.  We've lived a lot of delay over six months.  The

18  lenders have seen delay for the past 18-plus months, and so

19  we're concerned about delay, Your Honor.

20          And I don't raise that to discount the issues

21  between counsel is having with its client.  I raise that

22  because what I don't want today to become a prelude to, Your

23  Honor, is a request in the future that extensions be allowed

24  to the brief summary judgment motions; motions, Your Honor,

25  which are partial motions for summary judgment, but carry

1 damages of the full amount being sought within this case.

2          And so my request, Your Honor, is that if

3 withdrawal is granted, that such withdrawal be granted with

4 the understanding that the effects of today should not be to

5 create and precipitate more delay in this case schedule,

6 which has already seen a significant delay, including at the

7 hands of the principals of the Defendants.

8          Thank you, Your Honor.

9          THE COURT:  Okay.  Thank you.

10          All right.  Here's what I'm going to do.  Mr. Van

11 Tol, I know what you're going through.  I've been in that

12 position in prior practice myself, but we're at -- the only

13 thing I'm concerned about is the summary judgment motion.  So

14 I'm going to deny the motion to withdrawal until after

15 argument on the motion for summary judgment, if there is even

16 going to be one.  It may be once I review the papers, I won't

17 need oral argument, but until then, I want to at least have

18 the ability to get through that summary judgment motion

19 before I allow you to withdraw from the case.

20          Hopefully, that will be -- if August 30th is the

21 final briefing, we'll get something scheduled by mid-

22 September, so maybe a few more weeks and then you can bring

23 the motion -- I'll hold it in abeyance.  Let's do it that

24 way.  I'll hold the motion in abeyance until after argument

25 on the motion for summary judgment.

1          MR. VAN TOL:  Thank you, Your Honor.  No

2    questions.  That's very clear.  I appreciate it.

3          THE COURT:  Okay.

4          MR. MILLER:  Good afternoon, Your Honor.  Evan

5    Miller of Saul Ewing, Delaware counsel to Mr. Morton.

6          Without belaboring or repeating many of the

7    comments Mr. Van Tol said, I can -- I assure the Court that

8    our rationale is similar.  The dialogue has been more so with

9    lead counsel than it has with us.  Some of the dialogue

10   referred to by Mr. Morton, for instance, was not at all with

11   our firm.

12         I don't know if Your Honor wants to hear anything

13   more from us or if it's we're in a similar boat to Hogan.

14   But in either respect, there was no objection raised to --

15   there was no objection filed, that is, to our motion to

16   withdraw.  We have, as Mr. Morton alluded to and Mr. Van Tol

17   alluded to, reached out to replacement counsel and tried to

18   assist with those efforts over the last few weeks, but at

19   this point, as Mr. Morton noted, unsuccessfully.

20         So, Your Honor, I'm happy to address any

21   additional questions that are not redundant to what Mr. Van

22   Tol said, but otherwise, we request the same relief.

23         THE COURT:  No questions.  I think the same

24   ruling, I'm going to hold it in abeyance until after we

25   finish oral argument on the motion --

1          MR. MILLER:  Understood.

2          THE COURT:  -- for summary judgment.

3          MR. MILLER:  Thank you, Your Honor.

4          THE COURT:  Okay.

5          MR. KORPUS:  Good afternoon, Your Honor.  Sheron

6  Korpus of Kasowitz Benson Torres, here for Mr. Ravindran and

7  Think & Learn and Tangible Play.

8          We have two motions on file to withdraw from both,

9  the adversary proceeding and from the general bankruptcy

10 case.  Your Honor, I think our position may be a little

11 different and I'll just focus on the differences.

12         So we filed those two motions.  There was no

13 objection from anybody.  No objection from the Debtor.  A

14 limited response from GLAS.  There's nobody here from --

15 Mr. Ravindran is not here.  There's nobody here from T&L.  We

16 have not been involved in trying to find any replacement

17 counsel.  I don't have any visibility as to whether or not

18 they are trying to find replacement counsel, I just don't

19 know.

20         Since nobody has opposed our motion, no one has

21 appeared, you'll even see in our opposition to the summary

22 judgment motion that we filed, it has documents attached to

23 lawyer declarations, but it does not have any client

24 declarations.  We have not been able to secure any client

25 declarations in opposition.

1          So, we've really done all that we can under

2     difficult circumstances over the last month.  We've completed

3     the briefing on T&L's motion to dismiss on jurisdiction and

4     service grounds that's pending before you.  It's also

5     incorporated, by reference, into the motion for summary

6     judgment.  We've briefed, on our side, that motion for

7     summary judgment and a couple of weeks ago -- maybe it was

8     even last week -- we dealt with the motion for a TRO that was

9     brought by the Debtor, which Judge Shannon covered for you.

10         And, again, we filed our position papers.  We

11    argued it.  We did as much as we can.  We actually won it.

12         So, at this point, Your Honor, there's really not

13    a lot that we can do here to assist the Court.  I also want

14    to just tell you a little bit about what's going on in India.

15    So the hearing last week was because there was a petition

16    brought by BCCI -- and tell me if you know all this.  I just

17    know that you weren't involved directly in the proceeding.

18         THE COURT:  I did talk with Judge Shannon about

19    what happened.

20         MR. KORPUS:  Right.  So the petition -- before the

21    petition brought by BCCI, an administrator was in place.

22    Because it's an Indian insolvency proceeding, when they have

23    somebody controlling the company, they oust current

24    management, Byju and (indiscernible) and this administrator,

25    we received a letter from that administrator, and so did

1   Mr. Cicero's firm, telling us that we should not take

2   instructions from the old management and that we shouldn't do

3   anything and that we would be subject to exposure; Kasowitz

4   Benson and Chipman Cicero would be subject to exposure if we

5   did do anything.  And we sent you a copy of that letter

6   before the prior hearing.

7              THE COURT:  I did see it.

8              MR. KORPUS:  In the interim, as I understand it,

9   the petition was dismissed due to a settlement, but then GLAS

10  appealed.  And a couple of days ago, the Appellate Court

11  issued a stay pending the hearing of that appeal, which is, I

12  believe, three days from now.  And during the stay period,

13  the administrator is back in position.

14             So, I'm back at the position where the person

15  running my putative client has instructed me not to do

16  anything and not to take instructions from anybody.  So I'm

17  kind of in this no man's land right now.  Even if I wanted to

18  do something, I'm being threatened with exposure if I do so.

19             So, Your Honor, for all of those reasons, and

20  given that there's no objection, we would ask that our

21  motions would be granted, and as Mr. Chipman and Mr. Cicero's

22  firm be allowed to also withdraw from the case.

23             THE COURT:  Okay.  Anybody else want to be heard?

24             MR. CICERO:  Just for the record, record, Your

25  Honor, Joseph Cicero.

1          We filed as a joint motion, so I think what Mr.

2 Korpus stated applies to our firm, too.  The reasons are set

3 forth in the motion.  Nothing further.

4          For the record, we ask that our firm be allowed to

5 withdraw, as well.

6          THE COURT:  I saw the Chipman firm has also moved

7 to withdraw from the involuntaries; is that right?

8          MR. CICERO:  I don't know if we're -- we're not

9 involved in the involuntary proceedings, Your Honor.  I think

10 DLA Piper has -- we never entered our appearance in the

11 involuntary proceeding.

12          THE COURT:  Yeah, I thought I --

13          MR. CICERO:  We asked, under the main case here

14 for BYJU's Alpha and the adversary.

15          THE COURT:  I thought I saw it.  Hold on one

16 second.

17      (Pause)

18          THE COURT:  Yeah, I have a notice of motion to

19 withdraw as counsel for Riju Ravindran, Tangible Play, Inc.,

20 Epic! Creations, Inc., and Neuron Fuel, Inc.

21          MR. CICERO:  From the main case.

22          We were served with -- that's how we got into this

23 case, Your Honor; initially, before the adversary was filed,

24 we appeared on behalf of Mr. Ravindran for Rule 2004

25 discovery.  That was the first hearing that we had.

1        And then subpoenas were issued to those -- prior

2  to the involuntaries, subpoenas were issued by, I think it

3  was the Debtor, to those other entities.

4        We appeared in the main case to deal with those

5  subpoenas, then the involuntary was filed.  We never appeared

6  in the involuntary proceeding.

7        THE COURT:  Okay.  All right.

8        MR. CICERO:  Thank you, Your Honor.

9        THE COURT:  Same thing, though, right?  You got

10  the motion for summary judgment pending, right?

11        MR. CICERO:  We are fully briefed.  I think their

12  reply is due on the 30th.

13        THE COURT:  Right.  So, I'm going to do the same

14  thing.  I'm going to hold it in abeyance until after I decide

15  whether I need oral argument and hear oral argument and then

16  I'll reconsider the motion at that point.

17        MR. CICERO:  Thank you, Your Honor.

18        THE COURT:  Okay.  That goes for you, too,

19  Mr. Korpus.

20        MR. KORPUS:  Thank you, Your Honor.

21        THE COURT:  All right.  Anything else for today?

22        MR. BRADY:  There is nothing further on the agenda

23  today, Your Honor.

24        THE COURT:  All right.  Thank you.

25        Let me know -- I'll be looking for the final

1  briefs on the 30th and we'll get oral argument scheduled as

2  quickly as possible after that.

3              All right.  Thank you, all.  We're adjourned.

4              COUNSEL:  Thank you, Your Honor.

5         (Proceedings concluded at 1:31 p.m.)

1                        CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                    August 22, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25